Air. Justice Story
delivered the opinion of the court. This is the case of an American ship, •ed by the enemy during the late war, and after -con-damnation and sale to an enemy merchant, recaptured b.y the American private armed ship Surprise., And the question is, whether, under these circumstances. *86 the ship is to be restored on salvage to the former ^merican owner, or condemned as good prize of war. If the case were to stand on the general salvage act of 1800, in cases of recapture, (act of 3d of March, 1800, ch. 14.) it is perfectly clear that the claimants are barred of all right; for that act expressly excepts f.cm its operation, all cases where the property has been condemned by competent authority. The same result would'flow from the principles of the law nations. .It. . , , ,, , admitted, on all sides, by puouc jurists, that m cases °f capture a .firm possession changes the title to the property ; and although there has been in former times much vexed discussion as to the time at which this change of property takes place, whether on the capture or .on the pernoctation, or on thé carrying infra preesidia, of the prize ; it is universally allowed, that at all events a sentence of condemnation completely extinguishes the title of the original proprietor, and transfers a rightful title to the captors or their sovereign. It would follow, of course, that property recaptured from an enemy. after condemnation would, by the law of nations, be lawful prize of war, in whomsoever the antecedent title might have vested.
„ .. , .maritime law, condemnation completely tiüf the tormerowner,
It is supposed, however, that the provisions of the salvage act of .1800, ch. 14, are materially changed, in cases of Captures by private armed, ships, by the fifth section of the prize act'of the 26th of June, 1812, ch. 107. That section declares, “that all vessels, goods, and effects, the property of any citizen of the United States, or of persons resident within and under the protection of the United States, or of persons permanently *87 resident within, and under the. protection of any foreign prince, government, or state, in amity with the United States, which shall have been captured by the enemy^ and which shall be recaptured by vessels commissioned as aforesaid, shall be„resto'red to the ' lawful owners upon payment by them respectively of a just and reasonable salvage,, to. be determined by the mutual agreement of the parties concerned, or by the decree of any court- of competent jurisdiction, according to the nature of each case, .agreeably to the provisions heretofore established by. law” The argument is,that as the section directs all vessels, goods, and effects of citizens and neutrals recaptured from the enemy to be restored, without any reference to the fact, whether they .had been previously condemned, or not, it so far qualifies and repeals the salvage act of 1800 ; and that consistently with this construction, the words “agreeably to fhe provisions heretofore established by law,” may and ought to be referred to the rate of salvage fixed by the act of 1800, and not to the provisions of that act generally. In su pport of this argument, it has been urged, that upon any other construction the whole section becomes completely inoperative, as every case is embraced in th.e previous law. That congress may well be presumed to have intended to make a descrimination between cases of recapture by public and private ships of war, unfavourable to the latter; and that congress may have had in view a conformity to' the British- prize code, which since the passing of the act of 1800 had been'changed in the manner now contended for by fhe claimant.
jwiftmtnii, to vessels British subjects'* only, even af after ^capture-set forth as snips of-war..
The argument-asserted from the British prize code; certainly, cannot be .suported. upon the notion of-any supposed recent change in the law relative to recap-So early'.as the reign of George IL the jus was, by statute, reserved, to British sub-upon all recaptures of their vessels and goods,.by . % . . • ■ British ships, even though a previous condemnation had passed upon them, with the exception of cases 'if'^lere such vessels, after capture, had been set forth as ships of war. The statute of 43 Geo. III. ch. 160, . , ■ s. 39. has-no farther altered the previous.laws,, than to fix the salvage ¿t uniform stipulated rates, instead of leaving it to depend-upon the length of-time the recap. tured ship was in the hands of the enemy. And the terms of this statute, are very different from the language of the fifth secton of our .prize, act of 1812,' and' expressly ¡xclude from its - operation and benefits'all neutral, property.
In respect.to the legislative intention; it is extremely difficult to draw any conclusion unfavourable to private armed ships from, the language or policy of the prize act,, or any. subsequent act 'of congress passed^during the war. The bounties held out-to these vessels, not only by the prize act, but by other auxiliary acts, manifest a strong solicitude in the government to encourage this species of force. Biit.we are not at-liberty to ;entertain any discussions in relation to the policy of the government, except so far as that policy is brought judicially to oür notice in the positive enactments, and declared will of the legislature. We must interpret, therefore, this clause of the prize act by the general rules of. construction applicable to *89 all statutes; and in this view we are of opinion that the doctrine contended for by the claimant ought not to prevail.
tio^heo|tht^' Act of 1812, ch. 107. anyofthepfí gXage°aCt of 3dMarch,l800 ch. 14, but is merely affirma existing law?
In the first place, the section in question contains no repealing clause of any of the provisions of salvage aet of 1800, and therefore'the whole law's .on this subject are to be construed together, and unless so far'as there is any repugnancy between them, are t° be considered as in full force. That the section is . free from all doubt in its language heed not.be asserted; but that every portion of it may by fair rules of interpretation, be deemed merely affirmative of the-existing law, is with great confidence maintained. There is no repugnancy which requires or even affords a presumption of legislative intent to repeal .any portion of the salvage act. It is true that the section declares that all vessels, goods, and effects recaptured shall be restored; but to whom are they to be restored? Certainly, by the very terms of the act, to the “lawful owners,” which to prevent the most injurious, and we had almost said absurd, consequences, must mean the “lawful owners” at the time of the recapture. But the lawful owners of the recaptured property, which has been, already, lawfully condemned, is not the original proprietor, but the person who has succeeded to that title under the decree of-condemnation. Suppose the property at the time of the capture had be-, longed to one neütral, and after condemnation had been sold to another neutral, and then captured and recaptured by the enemy, can there be a doubt that the latter is, to all intents and purposes, the true and lawful owner, and that he may assert his title against the *90 first proprietor?. Besides, recapture by force of the term would seem most properly applied to cases .where an inchoate title only was vested- by capture, Can it be said in’ strict propriety of language,' that property-captured from an enemy which at the time, is the lawful property of an enemy purchaser, is recaptured from his hands? The recapture is always supposed to be from persons who have, by operation of law, succeeded to the. title acquired under a decree of condemnation.
The1 section, however, does not stop here; nor is it necessary to rest its constructiorf upon the import of a ,few detached terms. • It proceeds,to declare that the recap-' turfed property shall be restored to the .lawful owners . upon payment of a reasonable salvage, “according to tl$e nature of each case, agreeably to the provisions heretofore estábl.ished by law.’” Here is a direct and palpable reference to the salvage .act, not for the purpose of repeal, but for the purpose of recognizing it as in full' force in respect to all cases of recapture. It is argued that the reference is confined to the mere rates of salvage established by that act. Let us see whether, .consistently with any supposed legislative intention, or any reasonable principle, such a construction can be sustained,. .
In the first place it would makw.a discrimination between recaptures of property belonging to the United States, and property belonging to neutrals and citizens; wholly unaccountable upon any principles, of national policy.. In case of a previous .condemnation the propr erty, if belonging to citizens or- neutrals, would be restored on salvage; if belonging to- the- United States; *91 it would be wholly condemned as good prize of war. in the next place, the property of neutrals and citizens, if recaptured by public ships, would be good prize; but if recaptured by private armed ships, would be restored on salvage. Yet in respect to neutrals or citizens, if the intention was to. confer a benefit on them, the reason would seem equally to apply to both cases, and-if there was a policy in discouragihg captures by' privateers, and encouraging captures by public ships, it is strange that the legislature should not, in relation to captures not within the purvipw of this clause, have made a similar discrimination. The reason would be the same, and yet in those cases the salvage act uniformly gives a highefTate of salvage to private armed ships than to public ships; and the prize acts superadd an exclusive bounty on prisoners of war captured by private armed ships, of no inconsiderable value. And whatever might be the case in relation to our own citi zens, it is somewhat singular that the legislature should be paying bounties out of the treasury-to encourage privateers, yrhen they, were in favour of neutrals; having no legal title, taking from-them a large proportion of the lawful proceeds of prize. .
By our law, dprodty0^ upon th/ re-capture of ‘he property of friends. Ifthey restore on salJtofe; ifthey W8 ■
There is yet another case which affords a more striking illustration of the difficulties which surround this construction. The salvage act of 1800 a ■ • 7 that upon the recapture of neutral property the rule . . , ,, -, T „ , .of reciprocity shall preyaii. If the neutral would in the like case restore on salvage; then the American courts are to restore on .the same salvage:, if wise,- then they are to condemn. If; therefore, by. *92 the prize act of 1812, restitution is to be made in all cases of. recapture of neutral property, and yet in the like, cases .the neutral sovereign would not restore, it would follow that the, restitution woüld be. without pay-, merit of any salvage, which, would be repugnant not only to the intent,- but to the words both of the salvage act and the prize act in any mode of interpretation. In a recent case in this court, (The Adeline, 9 Cranch. 244.) condemnation passed upon some French property which, during the late war, had, been captured by the enemy, and recaptured by an American privateer, upon the ground that the rule of reciprocity established by the salvage act. of-1800, applied to the case; and as France would deny restitution, our courts were bound to apply the same principle to her.
There does not, therefore, seem any solid reason-on which to rest the construction contended- for by the' claimant. And there are the most • weighty reasons, founded upon public inconveniency, upon.national law, and upon the very terms of the salvage and prize acts, fpr. the contrary construction. .In considering the section in question as merely affirmative, every difficulty vanishes an.d the symmetry'of a system:apparently built up with great, care and caution', as well as in strict accordance with the received principles of public law,.is maintained and enforced.
But it has been asked if the section is merely affirmative, what reason can .be assigned for its enactment? If.no satisfactory answer could be assigned,, it would not impair the force of the preceding', reasoning. .It is very common for the legislature to make laws in affirmance both of the . common *93 and statute law. This very act gives the district courts cognizance of captures, and yet it was clearly settled that the courts already possessed the same jurisdiction. .Doubts may and often do arise how far a\provision already in existence may be applied to cases contemplated in new statutes. To obviate such doubts, whether real or imaginary, is certainly not an irrational or unsatisfactory mode of legislation, and often prevents serious mischiefs during the fluctuations of professional opinions, prior to a legal adjudication. It was probably to' abviate some doubt of this sort that the clause in question was inserted in the act. Nor is it difficult to perceive some room for subtle doubt from the generality of the preceding (s. 4) section. ' That section declares’ that “ all captures■ and prizes of vessels and property shall be forfeited,” and accrue to the owners, officers, and crew of the capturing private armed ship; and from the generality of this language it might possible (we do not say upon any sound interpretation) have been doubted whether the words “ all captures” might not be held to comprehend captures of neutral property^ which had not .yet been condemned. At all events upon every view of this case the court are of opinion that the property having been previously condemned and the title passed to the enemy, and, consistently with the salvage and prize acts, must be decreed to be good prize of war.
Decree affirmed, with costs.a

 Vide ante, Vol. II. Appendix, note I. pp.40 — 49. As by the salvage act of the. 3d of March, 1800, ch. 168. the rule of reciprocity, (or, as Sir William Scott calls it, amicable retaliation,) is the rule to be applied to cases of recaptures Oj the property of friendly na. tions, it may be useful to'state *94 the provisions contained in the different maritime codes on this • subject, ’ or which have been ^substituted in their place by treaty. .
The present British law of salváge is established by the actofthe 43d Geo.III.ch. 160. the 39th section of which provides that, “ If any ship, ,or vessel,, taken as prize, or any goods therejri, shall appear, in the court of admiralty, to have belonged to any'of his majesty’s subjects, which' were before .taken by any of his majesty’s enemy’s and at any time afterwards re-taken by any of his majesty’s .ships, or any privateer, or other ship, or ^vessel, under his majesty’s protection; such ships,'vessels, arid -goods, shall, in all cases, (save as. hereafter excepted,) be adjudged to \be restored, and shall be accordingly .restored, to such former owner, or owners, he or they paying for salvage,"if re-taken by any, of his majesty’s ships, ono eighth part of the true value thereof, to the flag officers, captains, &>c. to be divided, &.c. And if retaken by any privateer, or. other ship, or vessel,’ one*sixth part of the true value of such ships and goods to be paid to the owners, officers,and seamen ofsuchprivateer, or other .vessel, without any deduction. And if retaken by the joint operation of one or more 'of his majesty’s ships, and one or more private ships of .war, the.judge of the court of admiralty, .or other court having cognizance there- . of, shall order such salvage, and in such proportions, to be paid to the captors by the owners, as he shall, under the circumstances of the case, deem fit and reasonable. But, if suclr recaptured ship, or vessel, shall appear to have been set ft th by. the enemy as a ship . or vessel of war, the said ship or vessel shall not be restored to the former owners; but shall, in all cases, whether re-taken by any of his majesty’s ships, or by any privateer, be adjudged lawful •prize, for the. benefit of the Captois.
' This rule, with respect to the property ofBritish subjects, is applied to recaptures of the property of nations in amity with Great Britain, until it appears that they act towards British property on a less liberal principle; in such case it adopts their rule, and restores, at - the same rate óf salvage, or condemns, under *95 the same circumstances in which their own law and practice restores or condemns. The Santa Cruz, 1 Rob. 5. 63.
By. the most recent French law, if ra French vessel be retaken from- the enemy, after being in his hands more than twenty-four hours, if recaptured a privateer, she is good prize to the re-captor; hut if re-taken before twenty-four hours have elapsed, she is restored to the owner, with the cargo, uppn the payment of one third the value for sal-' • vage, in. case of recapture by a privateer, ahd one thirtieth in case of a recapture by a public ship. But in case of recapture by a public ship, after 'twenty-four- hours possession, she is restored on a salvage of one tenth. [1].
*96 Although the'letter of the ordinances previous to the revolution, condemns as good prize, French .property recaptured after being twenty-four hours in possession of the enemy, whether the same be retaken by public, or private armed vessels; yet it seemSto have been the constant practice in France to restore such property when recaptured by he king’s ships. Valin sur l'Ord. Liv. 3. tit. 9. Des Prises, art. 3. Traite des Prises, ch. 6 sect. 1, n. 8. s. 88. Pothier. De Propriete. n. 97. Emerigon, Des Assurances tom. 1. p. 497. The reservation contained in the above ordinaneé of 1779, made the salvage discretionary in every .case,- it being 'regulated, by the king in council according to the ' particular circumstances, Emerigon. lb.
France applies her otyn rule to recaptures of the property . of friendly nations. Pothier, De propriete, n. 100. Emerigon, Des assurances, tom. 1. p, 499. By the Reglement of the 2 Praireal, 11th year, art. 54. this relaxation of the rule as to captures by public ships, is extended to allies ggfr nerally, so as to grant them restitution after twenty-four hours possession ny the enemy upon-the payment of a salvage of one tenth; but restitution on recaptures by public Aiips has always been made to the subjects of Spain an account of the intimate relation subsisting between the - two powers, whilst it is refused even to them iii recaptures by privateers. Azuni, Part 2. ch. 4. s. 11. Bonnemant's Translation of De Habreu, tom. 2. p. 83. 84.
The French • law, also, restores upon payment of sal* vage, even after twenty-four hours possession by the, enemy in cases where the enemy leave the prize a derelict, or it reverts to'the original proprietor in consequence of the perils of the seas, without a military-recapture. Ordonnance de 1681, liv. 3. tit. 9. Des Prises, art. 9, Vide ante, vol. II. Appen. p. 47.
*97 Spain formerly adopted the law of France, having'r-taken its-prize code from that country, with which it had been so long connected by the closest ties; and in the case of the San lago, ( mentioned in the Santa Cruz, 1 Rob. 50,) it was applied by the lords of appeal upon the principles of reciprocity as the rule in British recapturesof Spanish property. But by the Spanish prize ordinance of the 20th of June, 1801, art. 38, it was modified as to the property of friends, it being provided that when it appeárs that recaptured ships of friends are not laden for enemy’s account; they shall be restored, if recaptured by public vessels, for one eighth, if by privateers, for one sixth salvage; provided, that the nation to whom such property belongs, has adopted, or agrees to adopt, a similar conduct towards Spain. The ancient rule is preserved as to recaptures of Spanish property : it being restored without salvage if recaptured by a king’s ship, before or after twenty-four hours possession ; and if recaptured by a privateer within the twenty-four hours,” upon payment of one’ half for salvage ; if recaptured after that time it is condemned to the recaptors. The Spanish law has the same provisions with' the French in cases of captured property becoming derelict- or reverting to the possession of the former owners by civil salvage.
Portugal had adopted the French q.nd Spanish law in her ordinances 1704; and of December, 1796. But, in May, 1797, after the Santa Cruz was taken, and. before the judgment in that case, Portugal revoked her former rule that twenty-four hours possession devested the property, and fallowed restitution, on salvage of .one-eighth, if the recapture was by a Dublic ship and one-fifth if by a privateer, In the Santa Cruz and its fellow cases, Sir¿W, Scott distinguished between recaptures made before and since the ordinance of May, 1797 . condemning the former where the property had been twenty" four hours in the enemy’s pos“ session, and "estorihg the laf_ ter upon payment of the salvage fixed by the Portuguese ordinances.
The ancient law of Holland regulated restitution on salvage at different rates, according to the length of time the *98 property had been in the enemy’s possession. Bynk, C. J. Pub. I. 1. ch. 5. But as between the United States and the Netherlands, this matter is regulated by the convention of 1782. the first article of which provides, that recaptured vessels of either nation, not having been twenty-four hours in possession of the enemy of either, shall be restored on payment of one-third salvage, if re-captured by a privateer. By the 2d article, if the vessel has been twenty-four hours in possession of the enemy, and is recaptured by a privateer, she shall be condemned to the re-captors. • By the 3d 'article if the recapture is made by a public ship, the property is to be restored on payment of a thirtieth part for salvage, in case it has been twenty-four hours in possession of the enemy ; if longer, a tenth part.
The treaties, between the United States and Prussia of .1785, and 1799, by'which recaptures from a common enemy were regulated, have both expired.
The ancient law of Denmark condemned after twenty-four hours possession by the enemy, and restored,-if .the property had been a less time in his possession, npon payment of a moiety for salvage. Bat the ordinaiice of the 28th of ' March, 1810, restored Danish or allied property without regard to the length of time it might have been in the enemy’s possession, upon payment of one-third for salvage.
By the ancient Swedish ordinances, and that of July, 1788, it is provided, that the rates of salvage on Swedish property shall be one half of the value, without regard to the length of time the property may haye been in the enemy’s possession. Ti]e treaty between the United States and Sweden of 1783, which has expired, contained precisely the same stipulations on this subject as that with the Netherlands.
Although our salvage act may not, perhaps, extend to casés of recapture from pirates,' yet there can be little doubt that the benefit of the same equitable rule of reciprocity which is recognized by the statute, and is also a principle of public law, would be imparted to such cases. Thus Valin is of the opinion that the property of friendly nations, retafeen from piratesby French captors, ought not to be restored to them upon payment of salvage, if the law of their *99 own country gives it wholly to the retakers, otherwise there would be a defect oí reciprocky, wliich would offend against that impartial justice which' is due from one state to another.[1]
As a capture by pirates can- ' not devest the title of the original owner by any length of possession, however great,it is obvious that the former proprietor is entitled to restitution in case of recapture from them by friendly power's, upon the payment of a reasonable salvage.' But certain nations have established a different rule, at least, as respects the .property of their'own subjects and give the whole property recaptured from pirates to the re-takers. Such was, ór is, the usage of Holland', Spain, and some of the Italian States, Grotius, De J. B. ac. P. L. 3. ch. 9. s. 17. De Habreu, Part 2, ch. 6.
But Grotius is of the opinion that such a municipal regulation cannot prevent foreigners from reclaiming their property, upon payment of a reasonable salvage, because by the' universal law of nations the. property of the original owner is not devested on a capture by pirates, lb.
And by the 9th article of the treaty of 1795, between the United States'and Spain, the latter has dispensed with her peculiar law in this respect; both parties having stipulated to restore the property of eitliér nation recaptured from pirates.
In case of recapture from pirates, the French law restores the property of subjects and allies, (in which last term, neutrals are included,) on payment ofone-third for salvage.[2]
A capture by a cruizer of the.Barbary powers is not a piratical seizure, which will *100 have the effect of invalidating the conversion of property untier it. They were formerly considered as pirates, but have vince acquired^the rights, oflegation and of war in form, •Consequently, recaptures from them are to be judged'by the same rule as those from, any other public enemies. The Helena, 4 Rob. 3. Sir L. Jenkin’s works, Vol. II. p. 791. Bynk. Q. J. Pub, L. 1 ch. 17. Emerigon, Des Assurances tom. 1. p. 526. [1] But the law of nations, as received among the nations of Europe and the countries^colonized by them, •or that part of the human race denominated Christendom, is not, to be applied to them, to thejTurks'and otherMoh’ammedan people, with thejsame-rig•our, and in all the details with which it is administered among that class of nations to which it is peculiarly applicable, The Helena, 4 Rob. 3. The Kinders Kinder, 2 Rob. 88. The Hurtage Hane, 3 Rob. 324. The Madonna del Burso. 4 Rob. 299. Ward’s History of the Law of Nations. The same formalities in . proceeding to condemn captured property, are not required in order to devest the title of the original owner. It is sufficient, if the confiscation takes place in their way, and according to the established custom of that part of tiie world. The Helena, 4 Rob. 3. But they are held to be bound to an observanee of the law of blockade that being one of the most an. iversal and simple operation* of wav ; and if a European army or fleet is blockading a town or port, they are not at liberty to trade with it. The Hurtege Hane, 3 Rob. 324. And though;jn prize causes, an indulgence is granted to the subjects of the Ottoman empire, which is not allowed to any foreigners of Christendom in consideration of their peculiar situation and character, and of their not being professors of *101 exactly the same law of na-' tions with ourselves; yet in matters of contract between such persons, or between them and other foreigners, courts of Justice have' notthought themselves at liberty to act otherwise, than by the general rules applicable to all forensic business. The Jerusalem, 2 Gallis, 191—201.
The case of the rescue of captured-vessels and cargoes from the enemy, by the insurrection of the persons on board, ;is not provided for by ' our salvage act or the British statute. Nor is the case of resume mentioned in the French and other continental ordinances. Restitution to the original owner, is, however,, universally decreed in such casesj without regard to the length of time the recaptured property may have been in the enemy’s possession ; and the ■ rate of salvage is discretionary and dependant upon the value of the services performed. The Two Friends, 1 Rob. 271. The Walker, Stewart, 105. Valin, Traite des Prises, ch. 6, s. 1, n. 18. Bonnemant’s Translation of of De Habreu, tom. 2, o. 84. Emerigon, Des Assurances, tom, 1, p. 505.

. “ Si aucun navire de nos sujets pris par hos'ennemis, a ote entre. Icur mains jusques a vingt-quatre heures, et apres, qu’il soit recous o£ repris par aucuns de nos navires de guerre ou autres de nos sujets, la prise sera deciarco.bonne : mais si Iadito reprise est faite auparavant Ies vingt-quatre heures, il sera restitue aveo tout ce qui etoil dedans, et en aura toutefois le navire de guerre qui I’aura reeous et repris, le tiers.’’ Ordonnance d'Henri III. en Mars. 1584. art. 61. “Si aucun navire de nos' sujets est repris sur. nos ennemis, apres qu’il aura demeuro entré leur mains pendant vingt-quatre heures, il sera restitue au proprietairo, avee toutoe qui etoit dedans á la reserve du tiers qui sera donne au navire qui aura fait la recousse.” Ordonnance de 1681, Liv. 3 tit. 9. des Prises, art 8. “Les reglemens concernantla recousse contlnueront d’etre observes suivant leur forme et toneur; en co iscqüence, lorsque les navires de ses sujets auront etp repris par les eors iires arm as- en course contro los enq nemis de l’etat, apres avoir ete vingt-quiUre heures en leur mains, ilsleur appartiendront en totalite; mais dans le cas ou la reprise aura cté faite avant les vingt-quatre heures, le droit de recousse ne sera que du tier de la valeur du'navire reeous et de sa cargaivon. En so qui concerns les reprises faltes par les vaisseaux, fregates ou outres batimens-de sa majeste, le tiers sera adjuge a sonSprofit pour droit de recousse, si ello est faite dans Iés vingt-quatre heures; et apres ledit delai, la reprise sera adjugee en totalite a sa majeste, sans que les etats-majors des dits vaisseaux et fregates puissont y rien pretondre , se réservant sa majeste d’accorder aux equipages, une gratification proportionee a la voleur du ba" timent etdesacargaison, d’apres les connoisements et factures,comino aussi de dormer aux etats majors das vaisseaux qui auront faites les reprises, et qui auroient eu soin do se distinguer par des actions de valeur tclles graces ou recompenses que sa majeste avisera bon eire, suivantles circonstances.” Ordonnance de 15 Juin, 1779. “ Lorsque les batimens FrancaiS auront ete repris par les vaisseaux de la republique, apres avoir *96 qte 24heures au pouvoir de l’ennemi, lcs batimenset leur cargaisons appartiendront en totalite aux equipages preneurs; mais.dans lo cas ou la reprise aura ete faite avant los vingt-qúatre heures, le droit de recousse ne sera que du tiers de la valeur du navire. repris et de sa caí gaison.” Loi d'Octobre, 1793. By thq reglement of the 2d of Praireal, year II. art. 54. the rate of salvage on.recaptures by public Ships, before twenty four heurs possession, was fixed at one thirtieth.

. “Me feroit pensor, que les allies qui aux termes de' notre article" ont droit de reclamer leur effets repris sur des pirates par <fes Francois ne doivent s’entendre que de ceux qui suivant la meme. jurisprudence qae nous; autrement, il n’v auroit pa do reciprocite: ce qui blosseroit, l’egalite de justice, que Ies etats se doivent les uns aux autres. Sur l'Ord. L. 3 tit. 9 art. 10. Traite des Prises; ch. 6 s. 2 n. 8.

. “Les navires at effets ds nos sujets 'ou allies repris sur les pirates etreclaimcs dans.l’an et jour de la Declaration qui en aura etc faite en-l’Amiraute, seront rendus aux proprietaires, en payant le tiers de la valeur du va isseau, et des merchandises pour frais [de recousse. Ord. de 1681. L. 3 tit 9. Des Prises art. 10.

. Depuis long-temps, les mesurs antiques etoient disparues desBords, Africaines. Les Barbaresques etoient devenus devrais pirates. Bugia ei algieri,infami,nidi dicorsari, dit le Tasse; Jerusalem delivevee, chant. 15, st. 21. Mais nu'jourdhui ils ne merits plus eptte qualification, prace quo dans laur guerre, ils se eoníbrment a Vanden droit des gens. Ce n’est que par represadles queleures prisonniers deviennent eselave* par-mi nous.” Emerigon, loc. cit. Tom. 1 p. 256.