Howry, Judge,
delivered the opinion of the court:
There is but one issue and that relates to an illegally condemned vessel. The owners of both vessel and cargo were indemnified by their insurers for a greater sum than the amount of their losses. The proper distribution of the insurance appears in the findings. Nevertheless, the owners claim demurrage for the detention of the vessel independent of their losses for its value and for which they were otherwise reimbursed by their insurers as stated.
The act conferring jurisdiction in this class of claims provides relief for such citizens of the United States or their legal representatives as had valid claims to indemnity upon the French Government arising out of illegal captures, detentions, seizures, condemnations, and confiscations within the period named by the statute. The immediate question before the court, then, is whether there was such an illegal detention as will entitle the proper parties to further relief.
After the vessel had been condemned the former master bought her in under the decree of condemnation at the sale. The presumption follows that the vessel was purchased by the master for the registered owners. The contention is that demurrage is allowable in cases where the vessel is shown to have been repurchased at the condemnation sale by or for the former owners whenever the date of the sale is disclosed. According to that contention the court eliminates from consideration the case of the Hiram, 23 C. Cls., 431, because in that case the court was advised that the time of sale and the time of condemnation were coincident, or, if not coincident, that the condemnation and sale were so contemporaneous as *143 to escape notice. In the case now before the court the circumstances show a difference.
But in further support of their contention the claimants rely upon the case of the Liberty, Caldwell, H. Doc. No. 639, 59th Cong., 1st sess., the Delaware, Dunphy, H. Doc. No. 904, ib., and the Little John Butler, Smith, H. Doc. No. 531, 59th Cong., 2d sess.
Defendants contend that no demurrage should be allowed for this detention, because in a number of repurchase cases (set forth in the margin) demurrage was not allowed.[1]
Besides' the cases mentioned in the margin it has been made to appear that the court has refused to allow demurrage in other claims not yet certified to Congress. While it is true that in some of the cases relied upon by the defendants the findings do not disclose the repurchase price by the American owner, and while it is also true that no claim appears for the allowance of damages by way of demurrage, nevertheless there are many cases where the principle was applied that demurrage could only be allowed up to the time of the decree condemning the property.
In the first case relied on by the claimants that damages should be allowed up to the date of the sale, we find that the Liberty was not condemned or sold at all, but that the vessel was released, and consequently demurrage was allowed for such detention as there was. The allowance therein was proper, but the action of the court furnishes no precedent for the case now under consideration. In the next case relied on an examination wñl show that the Delaware presented a case of salvage in the British Admiralty court and the matter of demurrage did not appear to have been in issue at all. This leaves for consideration the case of the Little John Butler, supra, which was decided in 1907. We are of opinion that the conclusion of the court there was erroneous, as we shall undertake to fully show by way of precedent for all future cases under this jurisdiction in the matter of demur-rage.
*144 Where findings disclose the fact of a repurchase by the former owners, through the master or other agents of the owners, demurrage can only cover that period dating from the capture to the condemnation.
The time at which demurrage for detention begins is when the property has been illegally detained. It ceases when the owner becomes divested of his title to the property because such owner becomes a stranger to, the res when the title is extinguished. In international law it is settled doctrine that the sentence of condemnation by a prize court completely extinguishes the title of the original proprietor and such condemnation transfers title to the captor or his sovereign.
In Williams v. Armroyd, 7 Cranch, 423, the court declared that a sale before condemnation by one acting under the possession of the captor does not divest the court of jurisdiction, but the condemnation relates bach to the capture, affirms its legality and establishes the title of the purchaser. More direct authority is found in the case of the Star, 3 Wheat., 78, where it washeldthat in cases of capture a firm possession changes the title to the property and that the senteuce of condemnation completely extinguishes the title of the original proprietor and transfers the full right.
The capture, detention, condemnation, and sale were illegal. The proper adjustment of insurance and the amounts thereunder due the insurers appear in the findings. The various items aggregate $5,016.03. The item of demurrage in favor of the insurers is restricted to the period dating from the capture to the condemnation and no further. This period was 10 days.
The foregoing findings, together with a copy of this opinion, will be certified to Congress.

 Alert, Gray, S. Doc. No. 5,52d Cong., 1st sess.; Packet, Smith, S. Doo. No. 35,51st Cong., 1st sess.; Three Friends, Miller, H. Doo. No. 301, 57th Cong., 1st sess.; Two Friends, Pond, H. Doo. No. 151, 58th Cong., 3d sees.; Flora, Bourn, H. Doo. No. 656, 59th Cong., 1st sess. Centurión, Greely, H. Doo. No. 798, 60th Cong., 1st sess.; Mercury, Gilpatrick. H. Doe. No. 1137,60th Cong., 2d sess.; Anna, Chase, S. Doc. No. 104,61st Cong., 1st sess.; Yea imán, Crane, 8. Doo. No. 5, 62d Cong., 1st seas.; Alciope, Bice, H. Doo. No. 32, 62d Cong., 1st sess.; and JEifca, Milier, H. Doo. No. 34,62d Cong., 1st sess.