## MELVIN LLOYD CO. et al. v. STONITE PRODUCTS CO. et al.

### No. 7636.

Circuit Court of Appeals, Third Circuit.

May 13, 1941.

884

Isaac J. Silin, of Erie, Pa. (Brooks, Curtze & Silin, of Erie, Pa., on the brief), for appellants.

A. D. Caesar, of Philadelphia, Pa., (Caesar & Rivise, of Philadelphia, Pa., and David S. Gifford, of Erie, Pa., on the brief), for appellees.

Before BIGGS, MARIS, and JONES, Circuit Judges.

MARIS, Circuit Judge.

Stonite Products Company was sued jointly with Lowe Supply Company in the District Court for the Western District of Pennsylvania for infringement of a patent for a boiler stand. Both defendants are Pennsylvania corporations. Each was served where it had its principal place of business, Lowe in the Western District, Stonite in the Eastern District of Pennsylvania. Lowe defaulted and the suit proceeded to judgment against it. Stonite entered a special appearance and moved to dismiss or quash the return of service. The district court granted the motion, quashed the return of service and dismissed the cause of action as to Stonite for the reason that the venue as to it was not laid in the district where acts of infringement are alleged to have occurred and where Stonite has a regular and established place of business. 36 F.Supp. 29. This appeal followed.

The controversy centers about the construction of Sections 48 and 52 of the Judicial Code, the former dealing with venue in patent infringement suits, the latter a general statute as to venue in the district courts in those states which have been divided into two or more judicial districts. Section 48 (28 U.S.C.A. § 109) provides: "In suits brought for the infringement of letters patent the district courts of the United States shall have jurisdiction, in law or in equity, in the district of which the defendant is an inhabitant, or in any district in which the defendant, whether a person, partnership, or corporation, shall have committed acts of infringement and have a regular and established place of business. If such suit is brought in a district of which the defendant is not an in-

habitant, but in which such defendant has a regular and established place of business, service of process, summons, or subpœna upon the defendant may be made by service upon the agent or agents engaged in conducting such business in the district in which suit is brought."

Section 52 (28 U.S.C.A. § 113) provides: "When a State contains more than one district, every suit not of a local nature, in the district court thereof, against a single defendant, inhabitant of such State, must be brought in the district where he resides; but if there are two or more defendants, residing in different districts of the State, it may be brought in either district, and a duplicate writ may be issued against the defendants, directed to the marshal of any other district in which any defendant resides. The clerk issuing the duplicate writ shall indorse thereon that it is a true copy of a writ sued out of the court of the proper district; and such original and duplicate writs, when executed and returned into the office from which they issue, shall constitute and be proceeded on as one suit; and upon any judgment or decree rendered therein, execution may be issued, directed to the marshal of any district in the same State."

The question for our determination is whether Section 52 is applicable to patent cases as well as to all other cases not of a local nature or whether venue in patent cases must be determined solely under the provisions of Section 48. In other words, is Section 48 inconsistent with Section 52? In determining whether these two sections are in conflict it is helpful to consider their legislative history and the reasons which led to their enactment. Section 48 was first enacted as the Act of March 3, 1897, 29 Stat. 695. In considering the reasons for its enactment some historical review is necessary. Section 11 of the Judiciary Act of September 24, 1789, c. 20, 1 Stat. 79, (§ 739, Rev.Stat.) permitted suit to be instituted in the federal courts against an inhabitant of the United States in any district in which he was an inhabitant or in which he was found at the time of serving the writ. This provision was continued in the Act of March 3, 1875, c. 137, § 1, 18 Stat. 470. The right to serve process upon a defendant in any district in which he chanced to be frequently placed the venue

of an action in a district quite distant from the scene of the controversy and the residence of the parties, with resulting hardship to a defendant who had to defend a suit at a great distance from his home and the homes of his witnesses. It was to remedy this hardship by limiting venue that Congress passed the Act of March 3, 1887, c. 373, 24 Stat. 552, in which it provided for the bringing of suit only in the district where the defendant was an inhabitant except where the jurisdiction was founded on the fact that the action was between citizens of different states, in which case suit could be brought in the district of the residence of either the plaintiff or the defendant. Although this act might readily have been construed as being applicable to all cases in which the circuit and district courts had jurisdiction[1] the Supreme Court stated in Re Hohorst, 150 U.S. 653, 14 S.Ct. 221, 37 L.Ed. 1211, that it did not apply to an alien or foreign corporation sued in the United States. By way of dictum the court stated that the act applied only to cases in which the federal courts had concurrent jurisdiction with state courts and was, therefore, inapplicable to a suit for infringement of a patent since the federal courts had exclusive jurisdiction over patent litigation.

After the decision of the Hohorst case there was considerable disagreement in the lower federal courts as to whether the dictum in that case went so far as to exclude patent litigation from the restricted venue prescribed by the Act of 1887. In 1895, however, the Supreme Court in Re Keasbey & Mattison Co., 160 U.S. 221, 16 S.Ct. 273, 40 L.Ed. 402, again by way of dictum once more stated that the Act of 1887 did not apply to patent litigation. Convinced by this reiteration the lower federal courts thereafter held that suit could be brought against a defendant in a patent infringement suit wherever process could be served upon him. Westinghouse Air-Brake Co. v. Great Northern Ry. Co., 2 Cir., 88 F. 258.

On March 3, 1897, Congress passed the act which afterward became Section 48 of the Judicial Code. It provided for the bringing of patent suits either in the district where the defendant was an inhabitant or in the district where the infringe-

---

[1] In Allen v. Blunt, 1 Blatchf. 480, Fed. Cas.No.215, Justice Nelson sitting at circuit construed the venue provision of Section 11 of the Judiciary Act of September ber 24, 1789, 1 Stat. 79, as a general provision applicable to all suits in the federal courts, including a suit for the infringement of a patent.

ment took place and where the defendant maintained a regular and established place of business. This act brought the venue of patent litigation more nearly into line with that of all other suits in the federal courts. By reason of the peculiar nature of patent infringements, however, the act preserved the right to bring suit in any district where the defendant maintained a business place provided acts of infringement had taken place in that district. But the unrestricted right to bring suit wherever the defendant could be served was not retained. It will thus be seen that the Act of 1897 restricted rather than enlarged the venue previously existing in patent cases, although still retaining for such cases a wider venue than was permitted in other litigation. See the illuminating discussion of this subject by Judge Coxe in Bowers v. Atlantic, G. & P. Co., C.C., 104 F. 887.

We now turn to the consideration of Section 52 of the Judicial Code which had its origin in the Act of May 4, 1858, c. 27, 11 Stat. 272. Originally the federal judicial districts were coextensive with the states. Section 2 of the Judiciary Act of 1789, 1 Stat. 73, provided for thirteen federal districts corresponding to the eleven states which first ratified the Constitution and the districts of Maine and Kentucky. Section 3 of the act created a court for each district. Within a few years Congress found it expedient to divide certain of the states into two or more judicial districts.[2] In a state thus divided one who desired to sue a number of defendants living in the state found it necessary to bring more than one suit if the defendants did not all reside in the same district. However, the idea that state lines should be used to delimit venue jurisdiction in the federal courts still persisted. It is clear that Congress had this idea in mind when, in dividing the State of Alabama into two judicial districts by the Act of March 10, 1824, c. 28, § 6, 4 Stat. 10, it provided: "That all suits hereafter to be brought, in either of

the courts aforesaid, not of a local nature, shall be brought only in the district where the defendant shall reside; but if there be more than one defendant, and some of them reside in the northern, and some in the southern district, the plaintiff may sue in either, and send a duplicate writ to the other, on which he shall endorse that it is part of a suit brought in the district from which it is sent; and the said writs, when executed and returned, shall constitute one suit, and be proceeded in accordingly." Similar provisions were made in many later acts.[3] In 1858 Congress passed the general act to the same effect which was afterwards incorporated into the Judicial Code as Section 52. Before the division of a state into judicial districts a plaintiff had the right to bring a single suit against any number of defendants residing anywhere within the state. The sole purpose of the Act of 1858 was to preserve to a plaintiff, after the division of the state into judicial districts, the same right to bring one suit against any number of residents of the state, even though they might happen to live in different districts. The act eliminated any possible prejudice to a plaintiff resulting from the division of a state into judicial districts.

It will thus be seen that the Act of 1858 related only to venue in a geographical situation thought to require special treatment, whereas the Act of 1897 related solely to venue in a special type of case. That Congress considered the two acts to be consistent with each other may fairly be inferred from the fact that they were incorporated into the Judicial Code as Sections 52 and 48 respectively, without any suggestion that Section 52 which in terms applies to "every suit" does not apply to a patent suit or that the venue for patent suits provided by Section 48 is to be deemed exclusive of the venue prescribed by Section 52 for all cases in those particular states which are divided into judicial districts. In this connection it is to be noted

---

[2] Act of April 29, 1802, c. 31, § 7, 2 Stat. 162, three districts in North Carolina; Act of April 29, 1802, c. 31, § 16, 2 Stat. 165, two districts in Tennessee; Act of April 9, 1814, c. 49, 3 Stat. 120, two districts in New York; Act of April 20, 1818, c. 108, 3 Stat. 462, two districts in Pennsylvania; Act of February 21, 1823, c. 11, 3 Stat. 726, two districts in South Carolina; Act of March 3, 1823, c. 44, 3 Stat. 774, two districts in Louisiana.

[3] Mississippi. Act of June 18, 1838, c. 115, § 4, 5 Stat. 248; Tennessee. Act of January 18, 1839, c. 3, § 7, 5 Stat. 314; Alabama. Act of February 6, 1839, c. 20, § 5, 5 Stat. 315; Georgia. Act of August 11, 1848, c. 151, § 5, 9 Stat. 281; Iowa. Act of March 3, 1849, c. 124, § 3, 9 Stat. 411; Ohio. Act of February 10, 1855, c. 73, § 9, 10 Stat. 606. See Petri v. Creelman Lumber Co., 199 U.S. 487, 498, 26 S.Ct. 133, 50 L.Ed. 281.

that Section 52 does expressly except from its purview suits of a local nature. The failure to include in the exception suits for patent infringement is a strong indication that such suits are intended to be governed by its provisions. Our historical review reveals that Congress has always accorded to patent litigants a broader venue than that extended to other civil litigants. In the light of this legislative history it hardly seems likely that Congress intended by the Act of 1897 to withdraw from patent litigants the state-wide venue which it had accorded from the beginning to all others. We find no support in the Judicial Code or in the statutes which preceded it nor do we see any basis in logic for the proposition that of all parties desiring to institute civil litigation a patent owner alone should be prejudiced by the fact that the state in which the alleged infringers of his patent reside has been divided into judicial districts.

■ We have seen that the subject matter of the two sections is distinct. Under these circumstances each should be given full effect if possible. In a broad sense, of course, each deals with the general problem of venue. If in this sense the sections may be deemed in pari materia they should be construed in harmony with each other so as to give effect to each, if reasonably possible. The Star, 16 U.S. 78, 3 Wheat. 78, 4 L.Ed. 338; The United States v. Freeman, 44 U.S. 556, 3 How. 556, 11 L.Ed. 724; United States v. Stewart, 311 U.S. 60, 61 S.Ct. 102, 85 L.Ed. ——. We think there is no lack of harmony between Section 48 which provides that the judicial district of which the defendant is an inhabitant shall be the proper venue for a personal action brought for the infringement of a patent and Section 52 which in practical effect provides that where the defendants in any personal action reside in two or more judicial districts within a state all the districts involved shall be treated as a single district for the purpose of venue jurisdiction over the defendants. Section

52 thus merely enlarges the meaning of the phrase "the district of which the defendant is an inhabitant" which appears in Section 48. We think that the construction of these sections of the Judicial Code was correctly indicated by Judge Dickinson in Zell v. Erie Bronze Co., D.C.E.D.Pa., 273 F. 833, 837, as follows: "The genesis of these several acts of Congress and the order in which they appear in the present Judicial Code are all consistent with this thought, that a defendant in any kind of a case may be sued in his own district, and there alone, except that where diversity of citizenship is a sole ground of jurisdiction he may also be sued, if service can there be had upon him, in the district of the plaintiff, and that in patent suits the infringer may be sued in the district in which he commits acts of infringement, if he there maintains an office, etc.; that where there are several defendants the plaintiff may proceed against the defendant who is an inhabitant of the district in which the suit is brought, and if all of the defendants reside within the same state, although in different districts, they may all be sued in the district of any one of them, extraterritorial service being made upon those out of the districts."

■ We conclude that the provisions of Section 52 authorizing a single suit to be brought against defendants residing in different districts in a state divided into judicial districts apply to patent suits to the same extent as to other non local suits and that the district court erred in holding otherwise. A different conclusion was reached by the Circuit Court of Appeals for the Ninth Circuit in Motoshaver, Inc. v. Schick Dry Shaver, Inc., 100 F.2d 236, but for the reasons already suggested we think that the court in that case in holding Section 52 inapplicable to patent cases failed to give that section its proper effect.

The judgment of the district court is reversed and the cause is remanded with directions to reinstate the complaint against the defendant Stonite Products Company.