# United States Court of Appeals for the Federal Circuit

---

**In re: BIGCOMMERCE, INC.,**
*Petitioner*

---

2018-120

---

On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in No. 6:17-cv-00186-JRG-JDL, Judge J. Rodney Gilstrap.

-------------------------------------------------------------------------------

**In re: BIGCOMMERCE, INC.,**
*Petitioner*

---

2018-122

---

On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in No. 2:17-cv-00160-JRG-RSP, Judge J. Rodney Gilstrap.

---

MARK A. LEMLEY, Durie Tangri LLP, San Francisco, CA, for petitioner. Also represented by CLEMENT ROBERTS, TIMOTHY C. SAULSBURY.

BRETT RISMILLER, Husky Finch, St. Louis, MO, for respondent Diem LLC, in 18-120.

TIMOTHY DEVLIN, Devlin Law Firm, Wilmington, DE, for respondent Express Mobile, Inc., in 18-122. Also represented by ROBERT DEAN KIDDIE, JR.

―――――――――

**ON PETITION**

―――――――――

Before REYNA, LINN, and HUGHES, *Circuit Judges.*

LINN, *Circuit Judge.*

## O R D E R

These petitions each seek a writ of mandamus, challenging the United States District Court for the Eastern District of Texas's orders denying motions to dismiss Case No. 6:17-cv-00186-JRG-JDL and transfer Case No. 2:17-cv-00160-JRG-RSP for improper venue under 28 U.S.C. § 1406(a). Because a domestic corporation incorporated in a state having multiple judicial districts "resides" for purposes of the patent-specific venue statute, 28 U.S.C. § 1400(b), only in the single judicial district within that state where it maintains a principal place of business, or failing that, the judicial district in which its registered office is located, and because Petitioner BigCommerce, Inc. ("BigCommerce") does not "reside" in the Eastern District of Texas, the petitions are granted.

### BACKGROUND

Respondents in these cases, Diem LLC and Express Mobile, Inc., each filed patent infringement suits against BigCommerce in the District Court for the Eastern District of Texas. BigCommerce is incorporated in the State of Texas and lists its registered office as being situated in Austin, Texas, where it is also headquartered. Austin lies in the Western District of Texas. It is undisputed that BigCommerce has no place of business in the Eastern District of Texas.

During the discovery phase of the cases, the Supreme Court issued its decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1521 (2017), which reaffirmed that a domestic defendant corporation "resides" under § 1400(b) only in its state of incorporation. Soon thereafter, BigCommerce moved to dismiss Diem's case and transfer Express Mobile's case, arguing that under the Court's decisions in *TC Heartland* and *Stonite Products Co. v. Melvin Lloyd Co.*, 315 U.S. 561 (1942), it resides only in the Western District of Texas.

In Diem's case, the magistrate judge recommended denying BigCommerce's motion, concluding that the objection had been waived under Federal Rules of Civil Procedure 12(h) and 12(g)(2). The district court adopted the magistrate judge's recommendation, but additionally concluded that even if the defense had not been waived, venue in the Eastern District of Texas would still be proper. In doing so, it explained that "a domestic corporation resides in the state of its incorporation and if that state contains more than one judicial district, the corporate defendant resides in each such judicial district for venue purposes." *Diem LLC v. BigCommerce, Inc.*, No. 6:17-cv-00186, 2017 WL 3187473, at *2 (E.D. Tex. July 26, 2017) ("*Diem Order*").

In Express Mobile's case, the magistrate judge issued an order denying BigCommerce's motion to transfer, stating that the district court had "already considered and rejected" BigCommerce's arguments in the *Diem Order* and "Defendant has articulated no reason to distinguish this case from that earlier ruling." *Express Mobile, Inc. v. BigCommerce, Inc.*, No. 2:17-cv-00130, slip op. at 1 (E.D. Tex. Nov. 8, 2017). BigCommerce then petitioned for a writ of mandamus in both cases.

DISCUSSION

A.

A party seeking a writ bears the heavy burden of demonstrating to the court that it has no "adequate alternative" means to obtain the desired relief, *Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 309 (1989), and that the right to issuance of the writ is "clear and indisputable," *Will v. Calvert Fire Ins., Co.*, 437 U.S. 655, 666 (1978) (internal quotation marks omitted). Further, even if these two prerequisites have been met, a court issuing a writ must, in its discretion, "be satisfied that the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 381 (2004). Moreover, mandamus review of an improper venue decision under § 1406(a) is rarely granted in the absence of exceptional circumstances. *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 382–84 (1953); *see Comfort Equip. Co. v. Steckler*, 212 F.2d 371, 374–75 (7th Cir. 1954) (denying mandamus review of a denied improper-venue motion); *Gulf Research & Dev. Co. v. Leahy*, 193 F.2d 302, 304–06 (3d Cir. 1951). This court found such exceptional circumstances in *In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017), and *In re Micron Tech., Inc.*, 875 F.3d 1091 (Fed. Cir. 2017), which were both § 1406(a) cases. We considered those decisions necessary to address the effect of the Supreme Court's decision in *TC Heartland*, which itself was yet another § 1406(a) case. 137 S. Ct. at 1517, *rev'g and remanding In re TC Heartland, LLC*, 821 F.3d 1338 (Fed. Cir. 2016).

Importantly, the Supreme Court has confirmed that mandamus relief may be appropriate in certain circumstances to decide "basic" and "undecided" questions. *Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964). In addition, mandamus may be appropriate "to further supervisory or instructional goals where issues are unsettled and important." *In re Queen's Univ. at Kingston*, 820

F.3d 1287, 1291 (Fed. Cir. 2016) (citation omitted); *see also Micron*, 875 F.3d at 1095–96; *Cray*, 871 F.3d at 1358–59; *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1313 (Fed. Cir. 2011).

These petitions present just such an issue. There is no doubt after the decisions in *TC Heartland* and *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222 (1957), that a domestic corporation defendant is deemed to reside only in its state of incorporation. But different district courts have come to different conclusions about whether a corporation "resides" under § 1400(b) in *every* judicial district within its state of incorporation when the state has more than one judicial district. *See Zin-Plas Corp. v. Plumbing Quality AGF., Co.*, 622 F. Supp. 415, 423 (W.D. Mich. 1985) (recognizing a split of authority on this issue even before the *TC Heartland* decision); *compare Realtime Data LLC v. Nexenta Sys., Inc.*, No. 2:17-cv-07690-SJO-JC (C.D. Cal. Jan. 23, 2018), *with Diem Order*. This question was not addressed in *Cray* or *Micron*, is "basic," and will inevitably be repeated. The petitions, thus, are deemed to present sufficiently exceptional circumstances as to warrant their immediate consideration via mandamus.

Our review is not precluded by the district court's waiver determination. We do not read the district court as having found waiver in Express Mobile's case. The merits issue is therefore squarely before this court in that case. Moreover, Respondents concede that, under *Micron*, the waiver determination in Diem's case was clearly incorrect as a matter of law. 875 F.3d at 1096 (concluding that the venue objection at issue here was not available for purposes of Rule 12 until *TC Heartland* issued). Respondents have not offered any non-Rule 12 basis for waiver to suggest that additional proceedings before the district court are needed, and the district judge and magistrate judge based their waiver determinations solely on Rule 12. Moreover, remand for consideration of waiver

apart from Rule 12 under the framework set forth in *Dietz v. Bouldin, Inc.* is not necessary in this case. *See* 136 S. Ct. 1885, 1891–92 (2016). BigCommerce moved to dismiss for improper venue nine days after *TC Heartland* issued, and at the time of the motion, the case had only been pending for approximately two months. These considerations weigh against a finding of waiver under *Dietz*. *See Micron*, 875 F.3d at 1101–02 (concluding that the district court may exercise its inherent powers to find waiver outside of Rule 12 under the framework of *Dietz*, including consideration of the timeliness of an improper venue objection with respect to the progress of the case towards trial and with respect to when the objection became available).

Nor must BigCommerce have asked the district court in Express Mobile's case for reconsideration of the magistrate judge's decision as a predicate to seeking mandamus. While the availability of seeking reconsideration ordinarily weighs heavily against granting a writ, courts have recognized that such a general rule should give way in circumstances where reconsideration by the district court would have been futile. *See Cole v. U.S. Dist. Court for the Dist. of Idaho*, 366 F.3d 813, 820 (9th Cir. 2004). Here, given the district court's conclusions in the Diem case, it likely would have been futile for BigCommerce in Express Mobile's case to have sought reconsideration.

## B.

We first address the question of whether a domestic corporation incorporated in a state having multiple judicial districts "resides" for purposes of the patent-specific venue statute, § 1400(b), in each and every judicial district in that state. We hold that it does not. That conclusion finds clear support in the statute's language, history, purpose, and precedent.

We begin with the language of the statute. *Mallard*, 490 U.S. at 300. Title 28, § 1400(b) (emphases added) states:

> Any civil action for patent infringement may be brought in *the judicial district* where the defendant *resides, or* where the defendant has committed acts of infringement and has a regular and established place of business.

A plain reading of "the judicial district" speaks to venue in only one particular judicial district in the state. *See NLRB v. Canning*, 134 S. Ct. 2550, 2561 (2014) (citation omitted); *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) ("The consistent use of the definite article in reference to the custodian indicates that there is generally only one proper respondent[.]"); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010) (explaining that because "place" in the phrase "principal place of business" in 28 U.S.C. § 1332, is singular, it must be a single place). This language is simply inconsistent with the understanding that a defendant resides in all districts in the state. The district court's contrary interpretation finds no textual support in the statute.

The interpretation that "the judicial district" means a single district is also supported by the provision's structure. The use of the disjunctive "or" coupled with a comma after "resides" indicates that "the judicial district" modifies only the first of the two venue tests in § 1400(b). *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979); *Winthrop Res. Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 470 (8th Cir. 2004). This strongly suggests that Congress had in mind one judicial district where the defendant resides, and at the same time allowed for suit in any judicial district where the defendant committed acts of infringement and had a regular and established place of business.

The history of § 1400(b) bears this out. Section 1400(b)'s predecessor statute provided that jurisdiction could only be established "in *the district* of which the defendant is an inhabitant, *or in any district* in which the defendant, whether a person, partnership, or corporation, shall have committed acts of infringement and have a regular and established place of business." Act of Mar. 3, 1897, ch. 395, 29 Stat. 695 (emphases added). It is further evident that despite the 1948 language changes in § 1400(b), Congress intended to maintain the substance of the law as it existed and was defined by its predecessor statute. *See Fourco*, 353 U.S. at 226, 228.

It is also evident from the general venue rules at the time that when Congress wanted venue to potentially lie in multiple judicial districts, it said so clearly. While maintaining a restrictive view in patent cases, Congress expanded the definition of where a corporation resides in other areas, authorizing suit "in *any* judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes." 28 U.S.C. § 1391(c) (1952) (emphasis added). The lack of similar language in § 1400(b) indicates that Congress did not intend for residence to include all judicial districts. *TC Heartland*, 137 S. Ct. at 1518 ("[Congress] 'placed patent infringement cases in a class by themselves outside the scope of general venue legislation.'" (quoting *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 713 (1972))).

The same conclusion also flows from the general principle of statutory construction that "where words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense unless the context compels to the contrary." *Standard Oil Co. v. United States*, 221 U.S. 1, 59 (1911); *see also Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 58 (2007); *Neder v. United*

*States*, 527 U.S. 1, 23 (1999). Here, by establishing venue in the judicial district where the defendant "resides," Congress specifically used a term of art that had a settled meaning in the law.

Prior to 1948, it was widely accepted that "for purposes of venue a corporation was a resident only of the state in which it was incorporated, and that it could be sued only in the judicial district within that state in which it kept its principal office and transacted its general corporate business." 14D Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3811 (4th ed. 2017); *see Galveston, H. & S.A. Ry. Co. v. Gonzales*, 151 U.S. 496, 504 (1894) (explaining that "[i]f the corporation be created by the laws of a State in which there are two judicial districts, it should be considered an inhabitant of that district in which its general offices are situated, and in which its general business, as distinguished from its local business, is done").

The Supreme Court has cited this line of authority in giving meaning to "resides" in § 1400(b), *see Fourco*, 353 U.S. at 226 (citing *Shaw v. Quincy Mining Co.*, 145 U.S. 444 (1892)), and has applied this understanding in the context of § 1400(b)'s predecessor. In *Stonite*, the patent owner sued two corporate defendants that were both incorporated in the state of Pennsylvania but maintained principal places of business in different judicial districts. The Western District of Pennsylvania dismissed the suit as to Stonite Products Company, which had its principal place of business in the Eastern District of Pennsylvania. *Melvin Lloyd Co. v. Stonite Prods. Co.*, 119 F.2d 883, 884 (3d Cir. 1941). On appeal, the Third Circuit reversed, concluding that jurisdiction over Stonite was proper under a general venue provision that permitted suits against two defendants residing in different districts within the same state to be filed in either district. *Id.* at 887. The Supreme Court disagreed. The "Stonite Products Company," the Court noted, was "an inhabitant of

the Eastern District of Pennsylvania without a regular and established place of business in the Western District of that State." *Stonite*, 315 U.S. at 562–63. Because "[t]he Act of 1897 was adopted to define the exact jurisdiction of the federal courts in actions to enforce patent rights," and because "there is little reason to assume that Congress intended to authorize suits in districts other than those mentioned in" the 1897 Act, the Court reversed, upholding the district court's dismissal. *Id.* at 565, 567. While it is true that the Court did not expressly spell out the standard for "inhabitant" in its decision, we are not free to ignore the clear import of its view on the issue: a corporation incorporated in a multi-district state is not a resident of every district in the state.

Respondents offer three arguments in support of the district court's contrary interpretation. First, Respondents contend that the definition of "resides" or "inhabits" as previously understood in cases like *Shaw*, *Galveston*, and *Stonite* is in tension or inconsistent with the Supreme Court's post-1948 cases, in particular *Fourco*. We disagree. *Fourco* said that the words "inhabitant" and "residence" are synonymous and "in respect of corporations, mean the state of incorporation only." *See Fourco*, 353 U.S. at 226 (citing *Shaw*, 145 U.S. 444). That *Fourco* said "state of incorporation only" and not "district within the state of incorporation only" does not imply that venue is thereby proper in *every* district within the state of incorporation. The better reading of *Fourco* is that the Court simply did not address the corporate venue at the district level of granularity, and set a *necessary* but not necessarily *sufficient* condition for corporate residence for venue under § 1400(b). We do not view *Fourco* as departing from the full scope of *Shaw*, which also stands for the proposition that incorporation in the state, while satisfactory for venue in single-district states, is not a sufficient condition in cases where the state is divided into multiple districts. *See Shaw*, 145 U.S. at 449 (stating that a corpo-

ration is a citizen and resident "only in the State *and district* in which it has been incorporated" (emphasis added)). This conclusion finds sound support in the Court's statement that no substantive change in the law was made from the time of *Stonite*. *TC Heartland*, 137 S. Ct. at 1519; *Fourco*, 353 U.S. at 228.

Second, Respondents urge that more flexibility should be allowed given the realities of modern business. *See* Diem's Response at 7–8 ("The days of corporations only operating local shops that only conduct local business are long gone. Modern businesses are fluid, amorphous entities that operate on an interstate and international level, often completely removed from the state in which they incorporate."). But this argument is a non-starter. "The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction." *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 264 (1961) (quoting *Olberding v. Ill. Cent. R.R. Co.*, 346 U.S. 338, 340 (1953)). We cannot ignore the requirements of the statute merely because different requirements may be more suitable for a more modern business environment. Such policy-based arguments are best directed to Congress.

Finally, Respondents contend that this narrow interpretation of § 1400(b) may make the statutory provision more difficult to apply in states having multiple judicial districts. Respondents note, for example, that defendants do not always have principal offices or other indicia of inhabitance in any location in the state in which they incorporate or may have facilities in more than one district. This raises the question: "Which single judicial district in a multi-district state is the proper judicial district for purposes of venue under § 1400(b) in an infringement suit against a corporate defendant?"

The answer depends on whether the corporate defendant maintains a principal place of business in the state. If so, the judicial district where the principal place of business is located would be the proper venue under the statute. *Galveston*, 151 U.S. at 504 (holding that corporate inhabitance is determined "by the principal offices of the corporation, where its books are kept and its corporate business is transacted"); 8 Fletcher Cyc. Corp. § 4030.10 (Sept. 2017) ("[T]he Supreme Court has held that a corporation's principal place of business, for diversity jurisdiction purposes, is its nerve center. This means the place where a corporation's officers direct, control, and coordinate the corporation's activities. This should normally be the place where the corporation maintains its headquarters, provided that the headquarters is the actual center of direction, control, and coordination, and not simply an office where the corporation holds its board meetings, for example, attended by directors and officers who have traveled there for the occasion." (citations omitted)). We note that the "principal place of business," as it relates to the "resides" prong of § 1400(b), is to be distinguished from the "regular and established place of business" prong of the statute. *Cf. Hertz*, 559 U.S. at 93 (distinguishing "principal place of business" from "general business activities" for purposes of diversity jurisdiction); *Cray*, 871 F.3d at 1362–64 (noting considerations for determining the "regular and established place of business" of the defendant).

If the corporation does not maintain its principal place of business within the state in which it is incorporated—yet for purposes of venue is considered to be a resident of the state in which it is incorporated, *TC Heartland*, 137 S. Ct. at 1521—then the natural default is to deem it to reside in the district in which its registered office, as recorded in its corporate filings, is located, *see Shaw*, 145 U.S. at 449. A universally recognized foundational requirement of corporate formation is the designa-

tion of a registered office that will serve as a physical presence within the state of the newly formed corporation. In the absence of an actual principal place of business as noted above, the public is entitled to rely on the designation of the registered office, as set forth in publicly available corporate filings, as the place where the corporation resides.

For the foregoing reasons, we hold that for purposes of determining venue under § 1400(b) in a state having multiple judicial districts, a corporate defendant shall be considered to "reside" only in the single judicial district within that state where it maintains a principal place of business, or, failing that, the judicial district in which its registered office is located.

Here, it is uncontested that BigCommerce maintains both its principal place of business and its registered office in Austin, Texas, within the Western District of Texas. Big Commerce has no corporate connection at all with the Eastern District. Thus, venue is proper under the resides prong of § 1400(b) only in the Western District of Texas.

Accordingly,

IT IS ORDERED THAT:

The petitions are granted, the order denying the motion to dismiss in Diem's case and the order denying the motion to transfer in Express Mobile's case are vacated, and the cases are remanded for further proceedings consistent with this Order.

FOR THE COURT

May 15, 2018
Date

/s/ Peter R. Marksteiner
Peter R. Marksteiner
Clerk of Court