Opinion for the court filed by Circuit Judge O’MALLEY. Dissenting opinion filed by Circuit Judge REYNA.
O’MALLEY, Circuit Judge.
Petitioners Queen’s University at Kingston and PARTEQ (together, “Queen’s University”) are engaged in a patent infringement action against Samsung Electronics Co., Ltd. and.Samsung Electronics America, Inc. (together, “Samsung”) in the United States District Court for the Eastern District of Texas. They seek a writ of mandamus directing the district court to withdraw its order compelling the production of Queen’s University’s communications with its non-attorney patent agents on grounds that the communications are privileged. We grant the petition.
Background
Queen’s University at Kingston was established in 1841 and is located in Kingston, Ontario, Canada. In 1987, Queen’s University founded PARTEQ Innovations in order to commercialize intellectual property arising from university-generated research. Queen’s University is the assignee of U.S. Patent Nos. 7,762,665; 8,096,660; and 8,322,856 (the “patents-in-suit”), and *1290 PARTE Q is the exclusive licensee. The patents-in-suit are directed to Attentive User Interfaces, which allow devices to change their behavior based on the attentiveness of a user — for example, pausing or starting a video based on a user’s eye-contact with the device.
On January 31, 2014, Queen’s University filed a complaint alleging patent infringement in the Eastern District of Texas against Samsung. In particular, Queen’s University alleged that Samsung’s Smart-Pause feature — which is in many of Samsung’s newest devices — infringed the patents-in-suit. The district court set trial for November 9, 2015.
Throughout fact discovery, Queen’s University refused to produce certain documents it believed contained privileged information. It produced three privilege logs that withheld documents based, inter alia, on its assertion of a privilege relating to communications with its patent agents (we, like the parties, refer to this as a “patent-agent privilege”). Samsung moved the district court to compel the production of these documents, which included communications between Queen’s University employees and' registered non-lawyer patent agents discussing the prosecution of the patents-in-suit. See Samsung’s Motion to Compel Documents, Queen’s Univ. at Kingston v. Samsung Elecs. Co., No. 2:14-CV-53-JRG-RSP (E.D.Tex. June 1, 2015), ECF No. 134. After holding a hearing on the matter, the magistrate judge granted Samsung’s motion to compel, finding that the communications between Queen’s University employees and their non-attorney patent agents are not subject to the attorney-client privilege and that a separate patent-agent privilege does not exist. See Minute Entry for Proceedings Held Before Magistrate Judge Roy S. Payne, Queen’s (E.D. Tex. June 17,2015), ECF No. 149.
Queen’s University filed an objection to the magistrate judge’s order, which the district court overruled. The district court declined to certify the issue for interlocutory appeal, but agreed to stay the production of the documents at issue pending a petition for writ of mandamus. Order, Queen’s (E.D. Tex. July 13, 2015), ECF No, 179. This petition followed and we ordered additional briefing and-argument to address it. Because any appeal from the final judgment of the district court will be taken to this court, we have jurisdiction to consider the petition under 28 U.S.C. § 1651(a) (2012).
Discussion
A. Choice of Law
When reviewing a district court’s decision, we apply the law of the regional circuit where that district court sits for non-patent issues, but we apply our own law for questions impacting substantive patent questions. See In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 803-04 (Fed.Cir.2000). Regarding discovery matters, this court has “held that Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent law.” Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc., 265 F.3d 1294, 1307 (Fed.Cir.2001). “[W]e will apply our own law to both substantive and procedural issues intimately involved in the substance of enforcement of the patent right.” O2 Micro Int’l Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1364 (Fed.Cir.2006) (internal quotation marks omitted) (quoting Sulzer Textil A.G. v. Picanol N.V., 358 F.3d 1356, 1363 (Fed.Cir.2004)). “[A] procedural issue that is not itself a substantive patent law issue is nonetheless governed by Federal Circuit law if the issue pertains to patent law, if it bears an *1291 essential relationship to matters committed to our exclusive control by statute, o.r if it implicates the jurisprudential responsibilities of this court in a field within its exclusive jurisdiction.” Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1359 (Fed.Cir.1999) (en banc in relevant part) (citations and internal quotation marks omitted).
Applying these standards,, we have held that we apply our own law when deciding whether particular documents are discoverable in a patent case because they relate to .issues of validity and infringement. See id. (citing Truswal Sys. Corp. v. Hydro-Air Eng’g, Inc., 813 F.2d 1207, 1212 (Fed.Cir.1987) (“[A] determination of relevance implicates the substantive law of patent validity and infringement. Hence, we look to Federal Circuit law.”)). We have also held that we apply our own law when making “a determination of the applicability of the attorney-client privilege to [a party’s] invention record [because it] clearly -implicates, at the . very least, the substantive patent issue of inequitable conduct.” Spalding, 203 F.3d at 803-04. Similarly, this case involves the applicability of privilege for a patentee’s communications with a non-attorney patent agent regarding prosecution of the patents-in-suit. Those types of communications are potentially relevant to numerous substantive issues of patent law, including claim construction, validity, and inequitable conduct. See Spalding, 203 F.3d at 803-04; Midwest Indus., 175 F.3d at 1359. Accordingly, we apply our own law.
B. Mandamus Review
In deciding whether to grant mandamus review for discovery orders that turn on- claims of privilege, we consider whether: “(1) there is raised an important issue of first impression, (2) the privilege would be lost if review were denied until final judgment, and (3) immediate resolution would avoid the development of doctrine that would undermine the privilege.” In re Seagate Tech, LLC, 497 F.3d 1360, 1367 (Fed.Cir.2007) (en banc) (internal quotation marks omitted) (quoting In re Regents of the Univ. of Cal., 101 F.3d 1386, 1388 (Fed.Cir.1996)). “Mandamus may thus be appropriate in certain cases to further supervisory or instructional goals where issues are unsettled and important.” In re Nintendo Co., 544 Fed.Appx. 934, 936 (Fed.Cir.2013) (citing In re BP Lubricants USA Inc., 637 F.3d 1307, 1313 (Fed.Cir.2011)).
Importantly, a writ of mandamus may be granted to overturn a district court order “only when there has been a clear abuse of discretion or usurpation of judicial authority in the grant or denial of the order.” Connaught Lab., Inc. v. Smith-Kline Beecham P.L.C., 165 F.3d 1368, 1370 (Fed.Cir.1999); see also Schlagenhauf v. Holder, 379 U.S. 104, 110, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964) (finding that “the writ is appropriately Issued ... when there is ‘usurpation of judicial power’ or a clear abuse of discretion” (quoting Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 383, 74 S.Ct. 145, 98 L.Ed. 106 (1953))). To prevail, a petitioner must establish that it has no other adequate means to attain the desired relief and that its right to issuance of the writ is “clear and indisputable.” See Cheney v. U.S. Dist. Court for D.C., 542 U.S. 367, 380-81, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004); see also In re Regents of the Univ. of Cal., 101 F.3d at 1387 (finding that the petitioner has the burden of establishing “that its right to issuance of the writ is clear and indisputable, and that it lacks adequate alternative means to obtain the relief sought”) (citing Mallard v. U.S. Dist. Court, 490 U.S. 296, 309, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989); Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, *1292 35, 101 S.Ct. 188, 66 L.Ed.2d 193, (1980)). As the issuing court, moreover, once the petitioner establishes the two prerequisites, we then have discretion to determine whether the writ is appropriate under the circumstances. Cheney, 542 U.S. at 381, 124 S.Ct. 2576.
In its petition, Queen’s University argued that mandamus is appropriate as it is its only remedy. See Queen’s University Appellant Br. 1-5. It argued, moreover, that the discovery order it petitions this court to overturn raises an issue of first impression. Id. Finally, it asserted that, if the discovery order is left in place and the communications-at-issue, are produced, “the confidentiality of those communications will be lost forever” as “[t]he [c]ourt cannot unring that bell.” Id. at 3. In its response to Queen’s University’s petition, Samsung contended that mandamus is inappropriate because, even if we were to find, that a patent-agent privilege exists such that the discovery order is clearly erroneous, the privilege issue can be reviewed as part of a complete appeal. See Samsung Pet’r Br. 14-17.
After careful consideration, we concluded that mandamus review of the district court’s discovery order in this case appeared appropriate. This court has not addressed whether a patent-agent privilege exists — it is an issue of first impression for this court and one that has split the district courts.[1] Immediate resolution of this is'sue will avoid further inconsistent development of this doctrine. See In re MSTG, Inc., 675 F.3d 1337, 1342 (Fed.Cir.2012) (“Mandamus review is appropriate here as to the privilege issue. The issue of whether settlement negotiations are privileged is a matter of first impression before this court and one on which district courts are split.”).
If we were to deny mandamus, ■ moreover, the confidentiality of the documents as to which such privilege is asserted would be lost. In the event that the documents were produced and a judgment on the merits reached, it would be difficult — if not impossible — for this court to disentangle the effect of the production of the allegedly privileged documents from other considerations that led to the judgment. See Spalding, 203 F.3d at 804 (“[W]hen a writ of mandamus is sought to prevent the wrongful exposure of privileged communications, the remedy of mandamus is appropriate ‘because maintenance of the attorney-client privilege up to its proper limits has substantial importance to the administration of justice, and because an appeal after disclosure of the privileged communication is an inadequate remedy.’ ”) (quoting In re Regents of Univ. of Cal. 101 F.3d at 1387).
*1293 Understanding that the legal standard for obtaining mandamus relief is an exacting one, we found it likely satisfied here and ordered additional briefing and argument on the merits of the privilege claim asserted.
In its supplemental briefing, Samsung informed the court that it had filed a request for inter partes review (“IPR”) on the patents-in-suit, that the United States Patent and Trademark Office (“USPTO” or “Patent Office”) had instituted those IPRs, and that the district court had stayed the proceedings pending a ruling from the Patent Office. Samsung now argues that the current stay of the district court action and the existence of the IPRs constitute changed circumstances that warrant denial of the petition for writ of mandamus, regardless of the merits. Samsung Pet’r Br. 17-18.
Queen’s University filed its petition for writ of mandamus in this court on July 17, 2015. Dkt. No. 1. The magistrate judge stayed the production of the relevant documents pending resolution of that petition in this court. Order Granting Stay of Production, Queen’s (E.D. Tex. July 13, 2015), ECF No. 179. Samsung then moved to stay the proceedings entirely under the theory that (1) the pending writ of mandamus would prejudice its ability to prepare for trial, and (2) the refusal to grant a stay would effectively give Queen’s University the relief it sought, since trial likely would proceed before this court could resolve the privilege íssu¿. Samsung’s Emergency Motion to Stay Pending Writ of Mandamus, Queen’s' (E.D.. Tex’ July 20, 2015), ECF No. 189. While that motion was pending, the Patent Trial and Appeal Board (the “Board”) instituted IPRs against all asserted claims of the patents-in-suit. See Queen’s (E.D. Tex. August 10, 2015), ECF No. 197; Queen’s (E.D.Tex. July 31, 2015), ECF No. 194. The magistrate judge then sua sponte ordered supplemental briefing on whether institution of the IPR affects its earlier stay of Queen’s University’s discovery obligation. Queen’s (E.D. Tex. Aug. 14, 2015), ECF No. 199.
The court concluded — as it had previously found — that the “production remains stayed pending resolution by the Federal Circuit.” Stay Order at 2, Queen’s (E.D.Tex. Aug. 28, 2015), ECF No. 214. The mágistrate judge further found that:
[g]iven the stay of Plaintiffs’ production obligations in light of their petition for writ, and further in view of the pending IPR proceedings that have been instituted as to all asserted claims (Dkt. Nos. 194, 197), the Court hereby STAYS the instant matter until 'the later of the Federal Circuit’s resolution of Plaintiffs’ writ, or the PTAB’s final adjudication in all instituted IPR proceedings.

Id.

Samsung contends that this order means there is no longer any imminent threat to Queen’s University regarding its production obligations. Samsung Pet’r Br. 17. As Queen’s University noted at oral argument, however, while the district court did stay the proceedings based on the IPRs, it invoked only the pending mandamus petition to stay the production of documents withheld by Queen’s University. Oral Arg. at 02:14-02:59, available at http:// oralarguments.cafc.uscourts.gov/default. aspx?fl=2015-0145.mp3; see Stay Order, Queen’s (E.D. Tex. Aug. 28, 2015), ECF No. 214’ at 2 (“[T]he Court elected to stay Plaintiffs’ production ‘pending disposition of the petition or other order of the Court of Appeals.’ (Dkt. No. 179) That production remains stayed pending resolution by the Federal Circuit.”). We too do not read the district court order as foreclosing the possibility -that a denial of the writ will require the challenged production even if *1294 the remainder of the proceedings is stayed for other reasons. There is, furthermore, no certainty as to when the IPR proceedings will end or what precisely those proceedings will resolve. It remains likely that some or all of the documents as to which privilege is claimed are at risk of disclosure. It also remains likely that a panel of this court will be asked to review the very merits issues this.panel already has considered at length. And, it remains virtually certain that future district courts will be asked to address almost identical privilege claims. For these reasons, while the IPR proceedings and accompanying stay certainly weigh against mandamus relief, we do not believe those changed circumstances offset the importance of resolving this issue and clarifying a question with which many district courts have struggled, and over which they disagree.
Turning to the merits, Queen’s University’s right to the issuance of the writ turns on whether a patent-agent privilege exists. Because we find that such a privilege should be acknowledged, we find that Queen’s University’s “right to issuance of the writ is clear and indisputable, and ... it lacks adequate alternative means to obtain the relief sought.” Spalding, 203 F.3d at 804-05.
C. Existence of the Patent-Agent Privilege
In federal district courts, the scope of discovery is governed by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides in relevant part: “Parties may obtain discovery regarding any non-privileged matter that is relevant to any party’s claim or defense and proportional to the needs of the case.... Information within this scope of discovery need not be admissible in evidence to be discoverable.” Thus, while the scope of permissible discovery is broad, it only encompasses documents relating to “nonprivileged matter[s].”
Rule 501 of the Federal Rules of Evidence addresses what is privileged. Rule 501 states:
The common law — as interpreted by United States courts in the light of reason and experience — governs a claim of privilege unless any of the following provides otherwise:
• the United States Constitution;
• a federal statute; or
• rules prescribed by the Supreme Court.
But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.
Fed.R.Evid. 501. “Rule 501 of the Federal Rules of Evidence authorizes federal courts to define new privileges by interpreting ‘common law principles.’ ” Jaffee v. Redmond, 518 U.S. 1, 8, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). Rule 501 “did not freeze the law governing the privileges of witnesses in federal trials at a particular point in our history, but rather directed federal courts to ‘continue the evolutionary development of testimonial privileges.’ ” Jaffee, 518 U.S. at 8-9, 116 S.Ct. 1923 (quoting Trammel v. United States, 445 U.S. 40, 47, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980)). Samsung does not contend that recognition of a patent-agent privilege is foreclosed by the United States Constitution, any federal statute, or any rule prescribed by the Supreme Court. We thus turn to “reason and experience” in order to determine whether a patent-agent privilege is now appropriate.
We do so with caution, however, recognizing that there is a presumption against the recognition of new privileges. Federal courts must be cognizant of the age-old principle that “the public ... has a *1295 right to every man’s evidence.” United States v. Bryan, 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950). Indeed, the Supreme Court has warned that evidentia-ry privileges' “are not lightly created nor expansively construed, for they are in derogation of the search for truth.” United States v. Nixon, 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).
The most well-known and carefully guarded privilege is the attorney-client privilege. It is well established that an attorney-client privilege exists to “encourage full and frank communication” between counselor and client and “thereby promote broader public interests in the observance of law and administration of justice.” Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); accord Trammel, 445 U.S. at 51, 100 S.Ct. 906 (“[P]rivilege rests on the need for the advocate and counselor to know all that relates to the client’s reasons for seeking representation if the professional mission is to be carried out.”). It is also without question that the privilege attaches to a communication made “for the purpose of securing primarily legal opinion, or legal services, or assistance in a legal proceeding.” Spalding, 203 F.3d at 805; see also Upjohn, 449 U.S. at 389, 101 S.Ct. 677 (stating that legal advice “can only be safely and readily availed of when free from the consequences or the apprehension of disclosure”).
It is true, moreover, that courts have consistently refused to recognize as privileged communications with other non-attorney client advocates, such as accountants. See Couch v. United States, 409 U.S. 322, 335, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); see also United States v. Arthur Young & Co., 465 U.S. 805, 817, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984) (“In light of Couch, the Court of Appeals’ effort to foster candid communication between accountant and client by creating a self-styled work-product privilege was misplaced, and conflicts with what we see as the clear intent of Congress.”). The same is true for jailhouse lawyers. See, e.g., Velasquez v. Borg, 28 F. 3d 110, at *1 (9th Cir.1994) (“Because [Petitioner] does not contend that he thought [the jailhouse lawyer] was authorized to practice law, he has not proven a violation of the attorney-client privilege as traditionally understood.”); Moorhead v. Lane, 125 F.R.D. 680, 686-87 (C.D.Ill.1989), (refusing to extend the attorney-client privilege “to communications made to a ‘jailhouse attorney.’ ”).
.Samsung concedes that, where a patent agent communicates with counsel or receives communications between his client and counsel, the attorney-client privilege may protect those communications from discovery. See, e.g., Park v. Cas Enters., Inc., No. 08-CV-03, 2009 WL 3565293, at *3 (S.D.Cal. Oct. 27, 2009). It contends, however, that, where counsel is not involved in the communications — as Queen’s University concedes is the case here — we should neither expand the scope of the attorney-client privilege nor recognize an independent patent-agent privilege to protect such communications from discovery. For the reasons we explain, we find that the unique roles of patent agents, the congressional recognition of their authority to act, the Supreme Court’s characterization of their activities as the practice of law, and the current realities of patent litigation counsel in favor of recognizing an independent patent-agent privilege.
In Sperry v. State of Florida ex rel. Florida Bar, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), the Supreme Court was faced with a challenge to the State of Florida’s attempt to regulate the activities of patent agents on grounds that those activities constitute the practice of law. *1296 The Supreme Court addressed the challenge in two stages: first, determining whether the activities of patent agents before the Patent Office constitute the-practice of law, and, second, determining whether, if so, the State of Florida had the authority to regulate" those activities. The Supreme Court answered the first question in the affirmative and the-second in the negative.
The Supreme Court expressly found that “the preparation and prosecution of patent ápplicátions for others constitutes the practice of law.” Id. at 383, 83 S.Ct. 1322. The Court concluded that:
[s]uch conduct inevitably requires the practitioner to consider and advise his clients as to the patentability- of their inventions under the statutory criteria, 35 U.S.C. §§ 101-103, 161, 171, as well as to consider the advisability of relying upon alternative forms of protection which may be available under state law. It also involves his participation in the drafting of the specification and claims of the patent application, 35 U.S.C. § 112, which this Court long ago noted “constitute[s] one of the most difficult legal instruments to draw with ■ accuracy.”
Id. (citations omitted). Sperry, thus, confirms that patent agents are not simply engaging in law-like activity, they are engaging in the practice of law itself. To the extent, therefore, that the traditional attorney-client privilege is justified based on the need for candor between a client and his or her legal professional in relation to the prosecution of a patent, that justification would seem to apply with equal force to patent agents.
While this threshold conclusion in Sperry is important to our decision, it is the rest of the Sperry opinion we find most informative. It is not the fact that — within the limited authority granted to them by the Patent Office — patent "agents engage in the traditional practice of law that is the most meaningful takeaway from Sperry, it is the Supreme Court’s explanation of why states may not regulate that practice of law that lends most support to the recognition of a patent-agent privilege. In holding'that the State of Florida had no authority to regulate the admitted practice of law by. patent , agents, the Supreme Court emphasized that it is Congress, who has authorized and continues to perjmit the practice of law by patent agents when appearing before the Patent Office. See id. at 379, 83 S.Ct. 1322 (“ ‘[T]he law of the State,, though enacted in the exercise of powers not controverted, must yield’ when incompatible with federal legislation. Congress has provided that the Commissioner of Patents ‘may prescribe regulations governing the recognition and conduct of agents, attorneys, or other persons representing applicants or other, parties before the Patent Office,’ 35 U.S.C, § 31, and the Commissioner, pursuant to § 31, has provided by regulation that ‘(a)n applicant for patent ... may be represented by an attorney or agent authorized to practice before the Patent Office in patent cases.’ 37 CFR § 1.31.”) (citing Gibbons,v. Ogden, 22 U.S. 1, 211, 9 Wheat. 1, 6 L.Ed. 23 (1824) (footnote omitted) (emphasis added)).
In explaining its holding, the Supreme Court discussed the history of the Patent Office’s power to regulate patent agents'. Id. at 388-400, 83 S.Ct. 1322. Looking to legislative history, the Court traced the discussion of patent agents by-Congress “back to 1861, when Congress first provided that ‘for gross misconduct [the Commissioner of Patents] may refuse to recognize any person as a-patent agent, either generally or in any particular case----’ ” Id. at 388, 83 S.Ct. 1322 (quoting Act of March 2, 1861, ch. 88, § 8, 12 Stat. 247). The 1869 “Rules and Directions” issued by- the Com *1297 missioner “provided that ‘(a)ny person of intelligence and good moral character may appear as the attorney in fact or agent of an applicant upon filing proper power of attorney.’ ” Id. at 388-89, 83 S.Ct. 1322 (quoting Rules and Directions for Proceedings in the Patent Office, § 127 (Aug. 1, 1869)). “From the outset, a substantial number of those appearing in this capacity were engineers or chemists familiar with the technical subjects to which the patent application related. ‘Many of them were not iftembers of the bar. It probably never occurred'to anybody that they should be.’” Id. at 389, 83 S.Ct. 1322 (quoting Letter from Edward S. Rogers, Hearings on H.R. 5527 Before' the H. Comm.-on Patents, 70th Cong., 1st Sess. 84 (1928)). In 1899, because non-attorney agents were found “particularly responsible for the deceptive advertising and victimization of inventors” at the Patent Office, the Commissioner first required the registration of those who jpracticed before the Office. Id. at 390, 83 S.Ct. 1322 (citation omitted). Then, “in 1922, the [patent] statute was amended to expressly authorize the Commissioner to prescribe regulations for the recognition of agents and attorneys,” .“to provide for the ‘creation of a patent bar[,]’ and ‘to require a higher standard of qualifications for registry,’” Id. at 390-91, 83 S.Ct. 1322 (citations omitted). '
In response to a provision in a proposed bill designed to make.it a criminal offense to misrepresent oneself as a registered patent practitioner, Congress discussed the distinction between patent lawyers and non-lawyer agents. Id. at 393, 83 S.Ct. 1322. “[T]ime and again it was made clear that the ... provision was not intended to restrict practice by agents, but was designed only to prevent them from labeling themselves ‘patent attorneys,’ as the Patent Office had theretofore permitted.” Id. (footnote omitted). Congress made clear that it did not intend to hinder the Patent Office’s right to allow non-attorney agents to prosecute patents before it, but only to prevent them from improperly holding themselves out as attorneys:
The proposed bills would not have affected “any engineers or draftsmen from doing those things which they have always been doing before the Patent Office”; the bills sought “to bring about no change in the status of the many men now registered and entitled to practice before the Patent Office, regardless of whether they are members of the bar or not — ” (Emphasis added.) “[T]here are quite a number of solicitors of patents who are highly qualified and who are not members of the bar, who never graduated at law and were never admitted to the bar. But this bill doesn’t disqualify those men. They can continue to qualify as patent agents.” (Emphasis added.) When asked “[w]hat is going to be the difference in the legal prerogatives of the agents and the others that come in,” the Commissioner of Patents responded that “[t]heir rights in the Patent Office will be exactly the same. Their rights in the courts will be different.” (Emphasis added.)
Id. at 393-95, 83 S.Ct. 1322 (footnotes omitted). In view of this storied history, the Supreme Court found “strong and unchallenged implications that registered agents have a right to practice before the Patent Office.” Id. at 395, 83 S.Ct. 1322. Samsung does not challenge the proposition that the prosecution of patents before the Patent Office constitutes the practice of law or that non-lawyer patent agents are allowed to engage in such practice under federal law. Nor can it, given the Supreme Court’s clear language in Sperry. *1298 [2]
The debate about whether to allow non-attorney patent agents to practice law before the Patent Office “received continuing attention both in and out of Congress during the period prior to 1952.” Id. at 398, 83 S.Ct. 1322. In Sperry, the Court found that the rights conferred to patent agents are federal rights and that Congress expressly permitted the Commissioner to promulgate regulations that allow patent agents to practice before the Patent Office in the 1952 Patent Act.[3] Ultimately, Congress endorsed a system in which patent applicants can choose between patent agents and patent attorneys when prosecuting patents before the Patent Office. Based on this, the Court found that the State of Florida could neither prohibit nor regulate that which federal law allowed. Id. at 379, 83 S.Ct. 1322.
Today, “[t]he Office — may establish regulations, not inconsistent with law, which— may govern the recognition and conduct of agents, attorneys, or other persons representing applicants or other parties before the Office.” 35 U.S.C. § 2(b)(2)(D). Pursuant to these powers, the Office has determined that “[a]ny citizen of the United States who is not an attorney, and who fulfills the requirements of this part may be registered as a patent agent to practice before the Office.” 37 C.F.R. § 11.6(b).
To the extent Congress has authorized non-attorney patent agents to engage in the practice of law before the Patent Office, reason and experience compel us to recognize a patent-agent privilege that is coextensive with the rights granted to patent agents by Congress. A client has a reasonable expectation that all communications relating to “obtaining legal advice on patentability and legal services in preparing a patent application” will be kept privileged. See Spalding, 203 F.3d at 806. Whether those communications are directed to an attorney or his or her legally equivalent patent agent should be of no moment. Indeed, if we hold otherwise, we frustrate the very purpose of Congress’s design: namely, to afford clients the freedom to choose between an attorney and a patent agent for representation before the Patent Office.[4]
*1299 Despite Samsung’s arguments, Jaffee does not. compel a contrary result. . Samsung argues that none of the considerations set forth by the Supreme Court in Jaffee in recognizing a psychotherapist privilege under Rule 501 of the Federal Rules of Evidence support the privilege we recognize here. In Jaffee, the Court relied on a number of factors to, determine that “a privilege protecting confidential communications between a psychotherapist .and her patient ‘promotes sufficiently important interests to outweigh the need for probative evidence.’ ” Jaffee, 518 U.S. at 9-10, 116 S.Ct. 1923 (citing Trammel, 445 U.S. at 51, 100 S.Ct. 906). Among those factors was the recognition of a psychotherapist-patient privilege by the States, the endorsement of such a privilege by a Judicial Conference Advisory Committee, and the need for trust and confidence between the client, and psychotherapist. Id. at 10-15, 116 S.Ct. 1923.- We agree that the circumstances addressed in Jaffee are vastly different from those we. address* and that the considerations upon which the Supreme Court rested its decision in Jaffee are not all applicable here. Nothing in Jaffee counsels against our conclusion today, however.
First, in Jaffee, there was no clear congressional intent to authorize an agency to create and regulate a group of individuals with specific authority to engage in the practice of law. As discussed above, Congress clearly intended to allow the Patent Office to authorize non-attorney patent agents to practice before it and Congress has amended the Patent. Act since Sperry characterized that activity as the practice of law, but has left .the authority of patent agents intact. Given this fact, the case for the recognition of a patent-agent privilege is perhaps even stronger than that for the psychotherapist-patient privilege defined in Jaffee.
Second, while the Jaffee Court was able to rely on a unanimous consensus among the States to justify the creation of the psychotherapist privilege, that fact is irrelevant given the uniquely federal character of the activities at issue here.[5] Sperry clearly held that “[a] State may not en-. force licensing requirements which, though valid in the absence of federal regulation, give ‘the State’s licensing board a virtual power of review over the federal determination’ that a person or agency is qualified and entitled to perform certain functions.” 373 U.S. at 385, 83 S.Ct. 1322 (quoting Leslie Miller, Inc. v. State of Ark., 352 U.S. 187, 190, 77 S.Ct. 257, 1 L.Ed.2d 231 (1956)). Neither legislative action by the States nor judicial decision by state courts on the issue of patent-agent privilege would be appropriate. Under Sperry, the States do not- have legislative authority to enact laws that conflict with the federal determination that patent agents may practice law before the Patent Office; they, thus, have no interest in whether communications regarding that activity are privileged. States also have no authority to create privileges applicable to patent actions in federal court.[6]
*1300 Third, while Samsung points to the fact that, in Jaffee, the Court found that the recognition of the psychotherapist-patient privilege by the Judicial Conference Advisory Committee on Evidence Rules “reinforced” the unanimous consensus among the States, it remains true that if the Advisory Committee does not recognize a privilege, “that fact standing alone would not compel the federal courts to refuse to recognize a privilege”’ United States v. Gillock, 445 U.S. 360, 367, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980). This is especially true given that it was the Advisory Committee itself that in 1974' recommended adoption of Rule 501 in its current form-leaving to the courts the role of acknowledging new privileges and taking the Advisory Committee out of the business of needing to do so, barring undue delay by the courts.
Finally, analogies to the attorney-client and spousal privileges which the Jaffee Court discussed actually support our conclusion that a patent-agent privilege is justified. The Court found that creation of the psychotherapist-patient privilege was appropriate in light of its comparison with the attorney-client and spousal privileges because each “is ‘rooted in the imperative need for confidence and trust.’ ” Jaffee, 518 U.S. at 10, 116 S.Ct. 1923 (quoting Trammel, 445 U.S. at 51, 100 S.Ct. 906). Likewise, the lack of a patent-agent privilege would hinder communications between patent agents and their clients, undermining the real choice Congress and the Commissioner have concluded clients should have between hiring patent attorneys and hiring non-attorney patent agents.[7] In this way, we find that recognition of the patent-agent privilege “serves public ends.”' Upjohn, 449 U.S. at 389, 101 S.Ct. 677. Because patent agents engage in the practice of law when representing' clients before the Patent Office, the patent-agent privilege furthers the same important public intéréSts as that of the attorney-client privilege.
The - dissent in Jaffee noted that “the lawyer-client privilege [] is . not identified by the broad area of advice giving practiced by the person to whom the privileged communication is given, but rather by the professional status of that: person.” 518 U.S. at 20, 116 S.Ct. 1923 (Scalia, J., dissenting). The Supreme Court’s characterization of the activity in Sperry coupled with the clear intent of Congress to enable the Office to establish a dual track for patent prosecution by either patent attorneys or non-attorney patent agents confers a professional status on patent agents that justifies our recognition ■ of the -'patent-agent privilege. Patent agents, moreover, must - pass an extensive examination on patent laws and regulations and must have a technical or scientific degree before they may represent patent applicants before the Patent .Office. -Finally, while patent agents certainly do not • have= the ethical obligations imposed on attorneys, they -do have very specific ethical obligations imposed by the Patent Office. See Manual of Patent Examining Procedure (“MPEP”) *1301 § 2001. The MPEP recognizes that “[a] patent by its very nature is affected with a public interest,” and, as such, “[e]ach individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability.” Id. § 2001(a). Indeed, recognizing the nature of the activities in which patent agents engage, the Patent Office has promulgated the “USPTO Rules of Professional Conduct,” which conforms to the Model Rules of Professional Conduct of the American Bar Association. See 37 C.F.R. § 11.100 et seq.
D. Scope of the Privilege
Notably, application of the rules of privilege to communications between non-attorney patent agents and their clients must be carefully construed. See Nixon, 418 U.S. at 710, 94 S.Ct. 3090 (“Whatever their origins, these exceptions to the demand for every man’s evidence are not ... expansively construed____”). Because patent agents are not attorneys, they are not authorized by the bar of any state to practice law. As such, before asserting the patent-agent privilege, litigants must take care to distinguish communications that are within the scope of activities authorized by Congress from those that are not. The burden of determining which communications are privileged and which communications fall outside the scope of the privilege rests squarely on the party asserting the privilege. See In re Google Inc., 462 Fed.Appx. 975, 977 (Fed.Cir.2012) (“The party asserting the attorney-client privilege has the burden of establishing the relationship and the privileged nature of the communication.” (internal quotation marks omitted) (quoting Ralls v. United States, 52 F.3d 223, 225 (9th Cir.1995))).
Regulations promulgated by the Office regarding the scope of a patent agent’s ability to practice before the Office help to- define the scope of the communications covered under the patent-agent privilege. In particular, 37 C.F.R. § 11.5(b)(1) provides:
Practice before the Office in patent matters includes, but is not limited to, preparing and prosecuting any patent application, consulting with or giving advice to a client in contemplation of filing a patent application or other document with the Office, drafting the specification or claims of a patent application; drafting an amendment or reply to a communication from the, Office that may require written argument to establish the patentability of a claimed invention; drafting- a reply to a communication from the Office regarding a patent application; and drafting .a communication for a public use, interference, reexamination proceeding, petition, appeal to or any other proceeding before the Patent Trial and Appeal Board, or other proceeding.
Id. Communications between non-attorney patent agents and théir clients that are in furtherance of the perfomlance of these tasks, or “which are reasonably necessary and incident to the preparation and prosecution of patent applications or other proceeding before the Office involving a patent application or patent in which the practitioner is authorized to participate” receive the benefit of the patent-agent privilege. Id.; see also id. § 11.5(b)(1)(i)-(ii).
Communications that are not reasonably necessary and incident to the prosecution of patents before the Patent Office fall outside the scope of the patent-agent privilege. For' instance, communications with a patent agent who is offering an opinion on the validity of another party’s patent in *1302 contemplation of litigation or for the sale or purchase of a patent, or on infringement, are not “reasonably necessary and incident to the preparation and prosecution of patent applications or other proceeding before the Office.” Id.; see also Changes to Representation of Others Before the United States Patent and Trademark Office, 73 Fed.Reg. 47,650-01, 47,670 (Aug. 14, 2008).[8]
E. It is the Court’s Role to Address the Question
The dissent’s primary themes are that we should not recognize a patent-agent privilege because there is no need for such a privilege and, if there were, we should allow others to recognize it. We have addressed the first point already. We now briefly address the second. The dissent first says we should defer to Congress to create a patent-agent privilege. But, after passage of the long-debated Rules Enabling Act of 1934, Congress granted the courts the authority to craft federal rules of procedure and evidence, including rules relating to privilege. See S.Rep. No. 1049, 73rd Cong., 2d Sess. (1934) (reprinting a letter from then-Attorney General Homer Cummings noting that the proposed bill would “empower the Supreme Court of the United States to prescribe rules to govern the practice and procedure in civil actions at law in the district courts of the United States and the courts of the District of Columbia,” leading to “uniformity and simplicity in the practice in actions at law in Federal courts,” “which, apart from its inherent merit, would also, it is believed, contribute to a reduction in the cost of litigation in the Federal courts”). Thus, Congress expressly and knowingly passed the torch to the courts to address the very question with which we are presented. The dissent’s desire to defer to the Director of the Patent Office is equally off-base. While the Director may have asked for input on the question and may seek to urge rule changes based on policy views, the Director has no authority to create a privilege that would be applicable in court. For these reasons, we believe we not only have the authority to recognize this privilege, but are the ones squarely charged with considering the question under Rule 501.
We find, consistent with Rule 501 of the Federal Rules of Evidence, that a patent-agent privilege is justified “in the light of reason and experience.” See Jaffee, 518 U.S. at 8, 116 S.Ct. 1923. We therefore recognize a patent-agent privilege extending to communications with non-attorney patent agents when those agents are acting within the agent’s authorized practice of law before the Patent Office.
Conclusion
Thus, we grant Queen’s University’s petition for mandamus relief and order the district court to withdraw its blanket order compelling the production of documents containing • communications between Queen’s University and its’ non-attorney patent agents. On remand, the court shall assess whether any particular claim of privilege is justified in light of the privilege we recognize today.
REVERSED AND REMANDED

. Compare, e.g., Buyer’s Direct Inc. v. Belle, Inc., No. SACV 12-00370-DOC, 2012 WL 1416639, at *3 (C.D.Cal. Apr, 24, 2012) (recognizing patent-agent privilege); Polyvision Corp. v. Smart Techs. Inc., No. 1:03-cv-476, 2006 WL 581037, at *2 (W.D.Mich. Mar. 7, 2006) (same); Mold Masters Ltd. v. Husky Injection-Molding Sys., Ltd., No. 01 C 1576, 2001 WL 1.268587, at *4-5 (N.D.Ill. Nov. 15, 2001) (same); Dow Chem. Co. v. Atl. Richfield Co., No. 83-CV-3763, 1985 WL 71991, at *5 (E.D.Mich, Apr. 23, 1985) (same); In re Ampicillin Antitrust Litig., 81 F.R.D. 377, 383-84, 391-94 (D.D.C.1978) (same); Vemitron Med. Prods., Inc. v. Baxter Labs., Inc., No. 616-73, 1975 WL 21161, at *1-2 (D.N.J. Apr. 29, 1975) (same), with Prowess, Inc. v. Raysearch Labs. AB, No, WDQ-11-1357, 2013 WL 247531, at *5’(D.Md. Jan. 18, 2013) (declining to recognize patent-agent privilege); Park v. Cas Enters., Inc,, No. 08-cv-0385 2009 WL 3565293, at *3 (S.D.Cal. Oct. 27, 2009) (same); In re Rivastigmine Patent Litig., 237 F.R.D, 69, 102 (S.D.N.Y.2006) (same); Agfa Corp. v. Creo Prods., No. Civ. A. 00-10836-GAO, 2002 WL 1787534, at *3 (D.Mass. Aug. 1, 2002) (same); and Sneider v. Kimberly-Clark Corp., 91 F.R.D. 1, 5 (N.D.Ill.1980) (same).

. The fact that, in the context of describing the authority given to patent agents before the Patent Office, the Commissioner of Patents mentioned that a patent-agent privilege was not then assertable in court does not, as the dissent implies, mean that Congress considered and rejected the creation of such a privilege. The Commissioner had no authority to create in-court privileges. The comment, moreover, was unrelated to the actual purpose for which the Commissioner’s testimony was solicited — i.e., the treatment of patent agents and patent attorneys before the Patent Office. More importantly, however, neither the Commissioner nor Congress could have foreseen in 1928 that patent litigation would expand as it has or that the prosecution history of patents would take on such a meaningful role in that litigation, both in connection with claim construction and in connection with a variety of invalidity and unenforceability challenges. The purpose of Rule 501 is to grant courts the authority — and, where appropriate, the obligation — to acknowledge new privileges where changing circumstances and considerations so warrant.

. The Sperry Court relied on 35 U.S.C. § 31, which has since been replaced by 35 U.S.C. § 2(b)(2)(D).

. The Patent Office recently issued a "Request for Comments on Domestic and International Issues Related to Privileged Communications Between Patent Practitioners and Their Clients.” 80 Fed.Reg. 3953 (Jan. 26, 2015). In response, the Patent Office received comments from the Australian Government, as well as a number of domestic and international trade groups, individuals, and companies. See Roundtable on Domestic and International Issues Related to Privileged Communications Between Patent Practitioners and Their Clients, http://www.uspto.gov/learning-and-resources/ ip-policy/roundtable-domestic-and-international-issues-related-privileged. To *1299 the extent these comments addressed the creation of a domestic, patent-agent privilege, they unanimously advocated for the recognition of a patent-agent privilege. While such comments are, of course, neither dispositive nor even legally persuasive, they are consistent with our conclusion that the recognition of a patent-agent privilege is appropriate.

. Jaffee, 518 U.S. at 12, 116 S.Ct. 1923 (“That it is appropriate for the federal courts to recognize a psychotherapist privilege under Rule 501 is confirmed by the fact that all 50 States and the District of Columbia have enacted into law some form of psychotherapist privilege,”).

. We note, moreover, that there are only rare circumstances in which communications with *1300 patent agents would ever be at issue in non-patent, state-court matters. Notably, in state court malpractice cases against patent agents, the patent-agent privilege would be-waived by the very filing of the action.

. We recognize that many parties, in order to accommodate the long-standing ambiguity in the law of privilege between patent agents and their clients, include a licensed attorney on any and all communications to ensure that at least some privilege is maintained. This work-around is unsuitable for a system designed tó give a real choice between selecting a non-attorney patent agent and a patent attorney. Indeed, it prejudices most of those independent inventors who may not have the resources to hire a patent attorney to maintain the privilege.

. Not only would such communications fall outside the scope of the patent-agent privilege, they likely would constitute the unauthorized practice of law. See id. (discussing the range of activities that constitute the practice of law in front of the Patent Office and noting that ‘‘[t]he scope of activities involved in practice of patent law before the Office is not necessarily finite, and is subject to change as the patent statute changes and rules are promulgated to the [sic] implement statutory changes”).