Justice Devine delivered the opinion of the court.
*532 In this petition for mandamus relief, relator Andrew Silver asks us to vacate the trial court's order compelling the production of e-mails between Silver and his non-attorney patent agent. The court of appeals, in a divided decision, denied Silver's mandamus petition. 500 S.W.3d 644 (Tex. App.-Dallas 2016, orig. proceeding). The court concluded that the communications between Silver and his patent agent were not protected from discovery because Texas law does not recognize a patent-agent privilege. Id. at 646-47. Silver contends, however, that the documents are protected under Texas Rule of Evidence 503 because patent agents are lawyers for purposes of Texas's lawyer-client privilege. Because we agree that a client's communications with his registered patent agent, made to facilitate the agent's provision of authorized legal services to the client, are privileged under Rule 503, we conditionally grant mandamus relief. See TEX. R. EVID. 503.
I
The United States Patent and Trademark Office (USPTO), an administrative body created by Congress, is responsible for granting and issuing patents. 35 U.S.C. §§ 1(a), 2(a)(1) (2012). The USPTO has authority to regulate the persons who represent patent applicants. Id. § 2(b)(2)(D). Among those the USPTO allows to provide such representation are, of course, patent attorneys. 37 C.F.R § 11.6(a) (2018). These are individuals who are in good standing with the bar of the highest court in any state and meet all the requirements for registration before the USPTO, which includes an examination. Id. §§ 11.1, .6(a), .7. Practice before the USPTO is not limited to attorneys, however. Applicants also have the option of hiring a patent agent-someone who is not an attorney, but has properly registered with the USPTO. Id. § 11.6(b). Patent agents must pass the same exam as patent attorneys. See id. § 11.7(b)(1)(ii). For purposes of prosecuting patents for clients before the USPTO, patent attorneys and patent agents can provide all the same services. See id. §§ 11.5(b), 11.6(a) - (b).
The underlying litigation concerns the Ziosk, a stand-alone tablet designed to allow customers at restaurants to order food and pay their check without having to interact with a waiter or waitress. The Ziosk is sold by Tabletop Media, LLC, which has partnered with chains such as Abuelo's, *533 Chili's, and Red Robin to place the device in their restaurants.
Andrew Silver claims he invented the technology that became the Ziosk and sold the patent to Tabletop. Silver brought a breach-of-contract action against Tabletop, alleging it failed to pay him for his patent. Tabletop answered, generally denying Silver's allegations.
During discovery in the underlying contract action, Tabletop sought production of emails between Silver and Raffi Gostanian, the patent agent who represented Silver before the USPTO. Silver refused to produce the emails, claiming them to be covered by the lawyer-client privilege. Although Gostanian is a registered patent agent, he is not a licensed attorney.
Tabletop moved to compel production, which the trial court granted. Silver then sought mandamus relief in the court of appeals to compel the trial court to withdraw the production order, asserting again the communications were privileged.
The court of appeals denied relief. 500 S.W.3d at 647. The court, however, understood Silver's mandamus petition to seek the creation of an independent patent-agent privilege, which the appellate court declined to do because it is "not the role of intermediate courts of appeals to declare new common law discovery privileges." Id. at 645 (quoting In re Fisher & Paykel Appliances, Inc. , 420 S.W.3d 842, 848 (Tex. App.-Dallas 2014, orig. proceeding) ). A dissenting justice argued Silver was not seeking the creation of a new patent-agent privilege but rather asking the court to apply Texas Rule of Evidence 503's lawyer-client privilege to communications between him and his registered patent agent. Id. at 650 (Evans, J., dissenting). We agree the issue is not the creation of a new patent-agent privilege but rather whether the existing lawyer-client privilege extends to communications between a registered patent agent and the agent's client. See TEX. R. EVID. 503 (codifying Texas's lawyer-client privilege).
II
Rule 503(b)(1) states the basic elements of the lawyer-client privilege. See generally , JEFF BROWN AND REECE RONDON, TEXAS RULES OF EVIDENCE HANDBOOK 411 (2016). Under the rule, a client is privileged from disclosing, and may prevent others from disclosing, communications made in confidence for the purpose of obtaining legal services. TEX. R. EVID. 503(b)(1). The rule also protects communications by the lawyer to the client. Id. 503(b)(1)(A)-(E).
At issue here is who may qualify as a lawyer for purposes of the privilege. The rule helpfully defines the term "lawyer" as "a person authorized, or who the client reasonably believes is authorized, to practice law in any state or nation." Id. 503(a)(3). Here, Silver does not contend he reasonably believed Gostanian to be a lawyer or that Gostanian was authorized to provide any legal services outside of the patent application and prosecution. Therefore, the sole issue is whether Gostanian was authorized to practice law when he provided patent-agent services to Silver. The parties disagree, however, about whether the phrase "authorized to practice law" is broad enough to include a registered patent agent.
Silver argues the rule's plain language includes a patent agent, such as Gostanian, within the definition of a "lawyer." He points to federal law that allows patent agents to provide the same services as patent attorneys before the USPTO upon passing the patent bar. Because the federal government allows patent agents to provide legal services to their clients, Silver concludes that patent agents are authorized to practice law within the rule's meaning.
*534 Finally, Silver submits the federal courts have already determined that a registered patent agent is a person authorized to practice law in the United States-albeit in a limited setting-and that these decisions should control the interpretation of the privilege under our own state rule. See Sperry v. State of Florida ex rel. Florida Bar , 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963) ; In re Queen's Univ. at Kingston, 820 F.3d 1287 (Fed. Cir. 2016).
In Queen's University , the Federal Circuit Court of Appeals extended the attorney-client privilege to communications with patent agents, recognizing as a matter of federal common law "a patent-agent privilege extending to communications with non-attorney patent agents when those agents are acting within the agent's authorized practice of law before the Patent Office." In re Queen's Univ., 820 F.3d at 1302. The Federal Circuit read the Supreme Court's decision in Sperry as confirmation that "patent agents are not simply engaging in law-like activity, they are engaging in the practice of law itself," thereby justifying the recognition of a privilege similar to that of the traditional attorney-client privilege. Id. at 1296.
In Sperry , the State of Florida sought to enjoin a registered patent agent from representing Florida clients before the USPTO because the agent was not a member of the Florida bar. Sperry , 373 U.S. at 381, 83 S.Ct. 1322. The Florida Supreme Court concluded that Sperry's actions constituted the unauthorized practice of law, which the State could prohibit. Id. at 382, 83 S.Ct. 1322. The United States Supreme Court disagreed, although the Court did "not question the determination that under Florida law the preparation and prosecution of patent applications for others constitutes the practice of law." Id. at 383, 83 S.Ct. 1322 (emphasis added). Because Congress allowed the Commissioner of Patents to regulate who was authorized to appear before the USPTO, however, the Court held the Supremacy Clause prohibited Florida from "deny[ing] to those failing to meet its own qualifications the right to perform the functions within the scope of federal authority." Id. at 385, 83 S.Ct. 1322. Thus, the Supreme Court did not disagree that the work performed by a registered patent agent constitutes the practice of law under Florida law.
Both cases may be viewed as persuasive authority that the work of a registered patent agent is the practice of law, although neither speaks directly to the meaning of the phrase under Texas law. Mauzy v. Legislative Redistricting Bd. , 471 S.W.2d 570, 573 (Tex. 1971) (stating that "decisions of courts of other jurisdictions, even if based upon identical facts, are no more than persuasive"). Therefore, contrary to Silver's contention, neither case controls our determination of Rule 503's meaning.
Our rules of evidence, like all rules promulgated by this Court, have "the same force and effect as statutes" and, as such, are interpreted in the same manner under state law. In re City of Georgetown , 53 S.W.3d 328, 332 (Tex. 2001). Thus, when determining a rule's meaning we typically rely on the ordinary meaning of the words used, unless the text or relevant definitions indicate a different meaning. See Melden & Hunt, Inc. v. East Rio Hondo Water Supply Corp. , 520 S.W.3d 887, 893 (Tex. 2017). When determining the ordinary meaning of a word, we frequently consult dictionaries. See, e.g. , ids="12383209" index="29" url="https://cite.case.law/sw3d/520/887/#p893">id. ; In re Christus Santa Rosa Health Sys. , 492 S.W.3d 276, 283 (Tex. 2016). We also examine any words at issue in context to give effect to the entire adopted text. Melden & Hunt , 520 S.W.3d at 893. With these principles in mind, we turn to Rule 503's language to determine whether a registered patent *535 agent is a "lawyer" for purposes of the lawyer-client privilege.
As previously noted, the rule defines "lawyer" as "a person authorized ... to practice law in any state or nation." TEX. R. EVID. 503(a)(3). The definition states two requirements for a person to qualify as a lawyer. First, the person must be engaged in a particular activity-the "practice [of] law." Id. Second, the person must be "authorized" to perform the activity in a state or nation. Id. Thus, understanding what it means to be a "lawyer" for purposes of the rule requires determining (1) what it means to "practice law" and (2) how one is "authorized" to do so.
A
Although Rule 503 does not define what the practice of law entails, a non-exclusive definition of the phrase is provided in the State Bar Act under its unauthorized-practice-of-law subchapter. See TEX. GOV'T CODE § 81.101. There, the "practice of law" is defined as:
the preparation of a pleading or other document incident to an action or special proceeding or the management of the action or proceeding on behalf of a client before a judge in court as well as a service rendered out of court, including the giving of advice or the rendering of any service requiring the use of legal skill or knowledge, such as preparing a will, contract, or other instrument, the legal effect of which under the facts and conclusions involved must be carefully determined.
Id. § 81.101(a). The definition is neither exclusive nor intended to deprive the courts from "determin[ing] whether other services and acts not enumerated may constitute the practice of law." Id. § 81.101(b). In their respective contexts, however, what it means to be a lawyer under the State Bar Act and under Rule 503 are not necessarily coextensive. For example, a "lawyer" under Rule 503 includes a person whom the client "reasonably believes is authorized[ ] to practice law" even though the person does not have a license. TEX. R. EVID. 503(a)(3). By contrast, reasonable belief plays no part in determining whether a person is a lawyer under the State Bar Act. Moreover, the State Bar Act's definition applies to the act only. See TEX. GOV'T CODE § 81.101(a).
Because the rule defines "lawyer" but does not otherwise explain what it means to practice law or be authorized to do so, we must rely on the ordinary meaning of the these terms. "Practice" means to exercise or pursue an employment or profession. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY , 1780 (3d ed. 2002). "Law" means the legal profession. Id. at 1279. Therefore, "the practice of law" is to pursue the legal profession. Similarly, Black's Law Dictionary defines the entire phrase "practice of law" as "the work of a lawyer." Practice of Law , BLACK'S LAW DICTIONARY (10th ed. 2014). Black's goes on to state that the "practice of law" encompasses:
[A] broad range of services such as conducting cases in court, preparing papers necessary to bring about various transactions from conveying land to effecting corporate mergers, preparing legal opinions on various points of law, drafting wills and other estate-planning documents, and advising clients on legal questions. The term also includes activities that comparatively few lawyers engage in but that require legal expertise, such as drafting legislation and court rules.
Id. These types of activities are exactly what the USPTO says that patent agents can perform. It expressly states that the ability to practice before the office includes "preparing ... any patent application," 37 C.F.R § 11.5(b)(1) (2017), which is a paper *536 necessary to bring about a transaction-and a highly involved one at that. See Sperry , 373 U.S. at 383, 83 S.Ct. 1322 (stating that a patent application constitutes " 'one of the most difficult legal instruments to draw with accuracy' " (quoting Topliff v. Topliff , 145 U.S. 156, 171, 12 S.Ct. 825, 36 L.Ed. 658 (1892) ) ). A patent agent's work also includes "representing a client" in various matters before the Patent and Trademark Office, 37 C.F.R § 11.5(b) (2017), which is the equivalent of conducting a case in court in the administrative context. Finally, practice before the Patent and Trademark Office entails giving advice to clients, including "the advisability of relying upon alternative forms of protection which may be available under state law." Id. at 11.5(b)(1)(i). Patent agents participate in many activities that make up the practice of law.
Simply performing tasks or functions from this list, however, is not sufficient. Implicit in the definition in both Black's and Webster's, and in line with common understanding of what it means to practice law, is that the practitioner is providing these services directly to the client. Similarly, the definition of "practice of law" in the State Bar Act states that some of the listed activities are performed "on behalf of a client." TEX. GOV'T CODE § 81.101.
As applied here, if a patent agent stays within the sphere of patent law, the agent can provide services directly to the client. The patent agent has no need of a supervising or intermediary attorney because the agent can provide all the same services. See 37 C.F.R. §§ 11.5(b), .6(a)-(b) (2017). In fact, the Intellectual Property Owners Association states in its amicus brief that non-attorney patent agents working without attorney involvement or supervision make up roughly 13% of the practitioners who appear before the Patent and Trademark Office. Patent agents are not just working in the legal field; they are independently providing professional legal services to a client. See In re Queen's University , 820 F.3d at 1296 (stating that "patent agents are not simply engaging in law-like activity, they are engaging in the practice of law itself").
Registered patent agents perform the same services and are subject to the same rules and requirements as patent attorneys in the application and prosecution of patents before the USPTO. No one seriously questions that this work constitutes the practice of law when performed by a patent attorney. Concluding that the work is something other than the practice of law when performed by a registered patent agent would be anomalous. Therefore, we hold that, within the scope of their practice before the USPTO, patent agents practice law.
B
The second part of Rule 503's definition of "lawyer" is that the individual practicing law must be authorized to do so by a state or nation. TEX. R. EVID. 503(a)(3). Tabletop submits that our Rule 503 is modeled after the proposed Federal Rule of Evidence 503, and indeed the two rules are very similar. The proposed federal rule defines "lawyer" as "a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation." Compare Rules of Evidence for the United States Courts and Magistrates , 56 F.R.D. 183, 236 (1973), with TEX. R. EVID. 503(a)(3). Tabletop contends that the drafters of the federal rule intended the phrase "authorized to practice law" to mean that the person was licensed to practice law. To support this interpretation, Tabletop points to the Advisory Committee's Notes that state for purposes of the rule a "lawyer" is "a person licensed to practice in any state or nation." Id. at 238 (emphasis *537 added). Because Silver's patent agent does not have a license to practice law, Tabletop concludes the agent is not "authorized" and thus not covered by Rule 503's privilege.
In the past we have looked to federal case law for guidance in interpreting a Texas evidentiary rule when a similar federal rule exists. Reid Road Mun. Utility Dist. No. 2 v. Speedy Stop Food Stores, Ltd. , 337 S.W.3d 846, 856 fn. 6 (Tex. 2011). On at least one occasion, we have even looked to the Advisory Committee's Notes to the Federal Rules to aid in interpreting our own similar rule, as Tabletop suggests we do here. Bradley v. State ex rel. White , 990 S.W.2d 245, 248 (Tex. 1999). When persuasive, these federal sources are very helpful. See E.I. Du Pont de Nemours and Co., Inc. v. Robinson , 923 S.W.2d 549, 556 (Tex. 1995) (adopting an interpretation of Texas Rule of Evidence 702 because the Court was "persuaded by the reasoning" of the federal case law). But the federal commentary here is not helpful because the federal rule was never adopted and the sentence from the commentary on which Tabletop relies is taken out of context.
Because the similar federal rule was never adopted, no case law interpreting the proposed rule exists. See FED. R. EVID. 501 advisory committee's note to 1974 enactment (noting that the original enacted version of the rules "eliminate[d] all of the Court's specific Rules on privileges" from the proposed version); H.R. REP. NO. 93-650, at 7082 (1973); JEFF BROWN AND REECE RONDON, TEXAS RULES OF EVIDENCE HANDBOOK 380 (2016). The relevant federal case law-that does exist-does not support the commentary on which Tabletop relies or the notion that the rule used the term authorized to mean only licensed. Instead, the federal authorities recognize that a registered patent agent, who does not have a license to practice law, is nevertheless engaged in the authorized practice of law before the USPTO. Sperry , 373 U.S. at 383, 83 S.Ct. 1322 ; In re Queen's University , 820 F.3d at 1296. Moreover, in context, the commentary indicates that the drafters did not intend to limit the privilege to communications with persons holding a law license. In its entirety, the note reads:
A "lawyer" is a person licensed to practice law in any state or nation. There is no requirement that the licensing state or nation recognize the attorney-client privilege, thus avoiding excursions into conflict of laws questions. "Lawyer" also includes a person reasonably believed to be a lawyer. For similar provisions, see California Evidence Code § 950.
Rules of Evidence for the United States Courts and Magistrates , 56 F.R.D. 183, 236 (1973). As previously noted, a "lawyer" under Texas Rule of Evidence 503 similarly includes a person whom the client "reasonably believes is authorized to practice law" even though the person does not have a license. TEX. R. EVID. 503(a)(3). A license is not a prerequisite to a person being classified as a "lawyer" under the rule.
Although the terms "authorized" and "licensed" are closely related, they do not mean the same thing. "Authorized" means "sanctioned by authority" or "approved." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY , 147 (3d ed. 2002). On the other hand, "licensed" means "permitted or authorized by license." Id. at 1304. Similarly, Black's Law Dictionary defines "authorize" as "to give legal authority; to empower," and "license" as "a privilege granted by a state or city upon payment of a fee, the receipt of the privilege then being authorized to do some act or series of acts that would otherwise be impermissible." Authorize , BLACK'S LAW DICTIONARY (10th ed. 2014). These definitions indicate that authorized conveys a broader meaning than *538 licensed and that being "licensed" is a subcategory of being "authorized." That is, licensure is a specific form of authorization.
The distinction was not lost on those responsible for drafting our rules. In other rules of privilege, the drafters chose to say licensed. See, e.g. , TEX. R. EVID. 509(a)(2) (stating that, for purposes of the physician-patient privilege, a "physician" is "a person licensed ... to practice medicine in any state or nation." (emphasis added) ). Not only that, but in Rule 510, for purposes of the mental health information privilege, a "professional" is defined as a person either "authorized to practice medicine in any state or nation" or "licensed or certified by the State of Texas." TEX. R. EVID. 510(a)(1)(A), (B) (emphasis added). If the drafters intended for the lawyer-client privilege to apply only to licensed attorneys, they knew how to say that. When interpreting a statute or a rule, we presume that language has been chosen "with care and that every word or phrase was used with a purpose in mind." Texas Lottery Comm'n v. First State Bank of DeQueen, 325 S.W.3d 628, 635 (Tex. 2010).
As mentioned above, "authorized" means "sanctioned by authority" or "approved." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY , 147 (3d ed. 2002). The Patent and Trademark Office has approved patent agents to practice before it. 37 C.F.R § 11.5 (2018). The Patent and Trademark Office, in turn, was given authority to do so by Congress. 35 U.S.C. § 2(b)(2)(D) (2012). A registered patent agent's authority to represent clients before the USPTO therefore comes from the United States, which is one of the sovereigns identified in our rule. See TEX. R. EVID. 503(a)(3) (defining lawyer as a person authorized to practice law in any state or nation). And, because patent agents are authorized to practice law before the USPTO, they fall within Rule 503's definition of "lawyer," and, as such, their clients may invoke the lawyer-client privilege to protect communications that fall within the privilege's scope.
III
The trial court concluded, however, that a client's communications with a patent agent are privileged only to the extent that the patent agent is acting under an attorney's direction. See 500 S.W.3d at 648. But if a registered patent agent qualifies as a "lawyer" for purposes of Rule 503's protection, which we conclude he does in the prosecution of a patent, the agent's client may assert the lawyer-client privilege even though the patent agent's work is not under a licensed attorney's direction.
Mandamus relief is appropriate when the trial court abuses its discretion, and no adequate appellate remedy exists to correct the abuse. In re Bexar Cty. Criminal Dist. Attorney's Office , 224 S.W.3d 182, 185 (Tex. 2007) (orig. proceeding). A trial court abuses its discretion when it compels the production of privileged documents. In re Nat'l Lloyds Ins. Co. , 449 S.W.3d 486, 488 (Tex. 2014) (per curiam) (orig. proceeding). Moreover, when the trial court orders production of privileged information, the party claiming the privilege has no adequate appellate remedy. In re Christus Santa Rosa Health Sys. , 492 S.W.3d 276, 279 (Tex. 2016) (orig. proceeding). Even where the law is unsettled or the issue is one of first impression, a court may abuse its discretion if its legal decision is incorrect. In re Bexar County Criminal Dist. Attorney's Office , 224 S.W.3d at 185 ; In re Prudential Ins. Co. of Am. , 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding). To the extent the trial court erroneously determined that no privilege applied to these documents and further *539 ordered their wholesale production, without first determining the client's claim of privilege, the court abused its discretion.
A client, however, can only refuse to disclose "confidential communications made to facilitate the rendition of professional legal services." TEX. R. EVID. 503(b)(1). This means that the communication must be "made by a client seeking legal advice from a lawyer in his capacity as such and the communication must relate to the purpose for which the advice is sought ...." Duval Cty. Ranch Co. v. Alamo Lumber Co. , 663 S.W.2d 627, 634 (Tex. App.-Amarillo 1983, writ ref'd n.r.e.). The client's communications with a registered patent agent regarding matters outside the agent's authorized practice area might not be protected because these communications are not necessarily made to facilitate the rendition of professional legal services.
A trial court can review documents in camera if necessary to determine whether a privilege applies. TEX. R. CIV. P. 193.4(a). When such a review is critical to the determination of a privilege claim, the trial court abuses its discretion when it fails to conduct an adequate in camera inspection. In re Living Centers of Texas, Inc. , 175 S.W.3d 253, 261 (Tex. 2005) (orig. proceeding); In re E.I. DuPont de Nemours and Co. , 136 S.W.3d 218, 223 (Tex. 2004). Because the privilege here could apply to some of the documents at issue, we conclude that the trial court abused its discretion by not conducting an in camera review.
* * * * *
Accordingly, we conditionally grant mandamus relief and direct the trial court to conduct an appropriate in camera review and vacate its order to the extent it compels production of Silver's privileged communications. We are certain that the trial court will comply. Our writ will issue only if it fails to do so.
Justice Guzman did not participate in the decision.